UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Chrysler Group LLC,

      Plaintiff,

v.                                                     Case No. 10-12984

South Holland Dodge, Inc., *et al.,*                   Honorable Sean F. Cox

      Defendants;

        *Consolidated with*

Livonia Chrysler Jeep, Inc., a Michigan
for profit corporation,

      Plaintiff,
v.                                                     Case No. 10-13290

Chrysler Group, LLC, *et al.*,                         Honorable Sean F. Cox

      Defendants;

        *Consolidated with*

Chrysler Group LLC,

      Plaintiff,

v.                                                     Case No. 10-13908

Sowell Automotive, Inc., *et al.*,                     Honorable Sean F. Cox

      Defendants.
_____/

## **OPINION & ORDER**

Following the 2009 bankruptcies of Chrysler LLC ("Old Chrysler") and General Motors

1

Corporation ("Old GM"), and actions taken to consolidate their respective dealer networks, Congress enacted Section 747 of the Consolidated Appropriations Act of 2010, Pub. L. No. 111-117 ("Section 747"). That Act was passed to grant certain arbitration rights to dealerships that were rejected or terminated in connection with the those bankruptcies. Several dealers who had been rejected by Old Chrysler initiated, and prevailed in, Section 747 arbitrations with Chrysler Group LLC (New Chrysler"). Those arbitration determinations have given rise to this litigation because the parties disagree as to what happens next following those Section 747 arbitration determinations.

In addition to New Chrysler, there are two different groups of dealers who are parties to this action. First, there are 8 dealers whose franchise agreements were rejected by Old Chrysler and who prevailed in Section 747 arbitrations with New Chrysler that are currently[1] parties in these consolidated actions: 1) Livonia Chrysler Group LLC ("Livonia"); 2) Village Chrysler Jeep, Inc. d/b/a Village Automotive Center ("Village"); 3) Fox Hills Motor Sales, Inc. d/b/a Fox Hills Chrysler Jeep ("Fox Hills"); 4) Boucher Imports, Inc. d/b/a Frank Boucher Chrysler ("Boucher"); 5) Jim Marsh American Corp. ("Jim Marsh"); 6) Spitzer Autoworld Akron, LLC ("Spitzer"); 7) BGR, LLC d/b/a Deland Dodge ("BGR"); and 8) Sowell Automotive, Inc., d/b/a Dodge City Chrysler Jeep ("Sowell") (collectively, the "Rejected Dealers"). Second, there are a number of existing dealers who are parties to this action because they oppose New Chrysler establishing or relocating a dealer who prevailed in a Section 747 arbitration into their area without following the provisions of state-law dealer acts ("Interested Dealers"). These Interested

---

[1]New Chrysler and a number of other dealers resolved their respective claims against each other.

Dealers include: 1) Crestwood Dodge, Inc.  ("Crestwood") (who opposes Livonia); 2) Fred Martin Motor Co. ("Fred Martin") (who opposes Spitzer); 3) Falls Motor City, Inc. ("Falls Motor CIty") (who opposes Spitzer); and 4) Hurley Chrysler Jeep, Inc. ("Hurley") (who opposes BGR).

This matter is currently before the Court on 15 dispositive motions filed by these parties. In these motions, the parties raise the common issue of what relief is provided by Section 747 to a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler. The motions also raise the common issue of whether Section 747 preempts state-law dealer acts. The parties have extensively briefed the issues and the Court finds that oral argument would not aid the decisional process.  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  The Court therefore orders that the motions will be decided upon the briefs.[2]

For the reasons that follow, the Court shall declare that: 1)   The sole and exclusive remedy for a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler is a customary and usual letter of intent to enter into a sales and service agreement with New Chrysler; 2) Section 747 does not provide for reinstatement of a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler; 3) Section 747 does not authorize an award of monetary damages; 4) Section 747 does not provide for judicial confirmation or enforcement and neither the FAA nor the AAA's Commercial Rules govern these statutorily-mandated arbitrations or authorize a party to move to confirm an arbitrator's determination in a Section 747 arbitration; and 5)  Section 747 does not preempt the state-law dealer acts that govern the relationships between automobile manufacturers and dealers in

---

[2]Accordingly, the Court shall deny all motions requesting oral argument.  (D.E. Nos. 355 & 360).

3

California (Cal. Vehicle Code § 3060 *et seq*.), Florida (Fla. Stat. § 320.01 *et seq*.), Michigan

(Mich. Comp. Laws § 445.1561 *et seq*.), Nevada (Nev. Rev. Stat. § 482.36311 *et seq*.), Ohio

(Ohio Rev. Code. § 4517.43), or Wisconsin (Wis. Stat § 218.0101 *et seq*.).

The Court shall also hold a Status / Scheduling Conference, to discuss the most efficient

method of adjudicating the remaining claims in this action.

**BACKGROUND**

This case has a fairly lengthy background, which is relevant to the issues presented in the

pending motions.

**A.**      **For Decades, State-Law Dealer Acts Have Provided Certain Protections For Existing Dealers And Allow Them To Challenge A Manufacturer's Decision To Establish Or Relocate Another Dealer Into A Given Area.**

For decades, various state-law dealer acts provide certain protections for existing dealers

and allow them to challenge a manufacturer's decision to establish or relocate another dealer into

a given area.

For example, in 1981, Michigan enacted Mich. Comp. Laws § 445.1561 *et seq*. ("the

Michigan Dealer Act").  Among other things, the Michigan Dealer Act provides protections for

existing dealers.  It regulates a manufacturer's establishment or relocation of a dealership within

a relevant market area where the same line make is already represented.  *See* Mich. Comp. Laws

§ 445.1566 & § 445.1576.  Before a manufacturer can establish or relocate a dealer into a

relevant market area ("RMA"), the manufacturer must do certain things – such as give written

notice to existing dealers within the RMA of its intention to establish or relocate another dealer

to the RMA.  Those existing dealers can then challenge that action by filing a declaratory action

in circuit court, to determine if good cause exists for the establishment or relocation of the dealer.

4

State-law dealer acts also exist in California, Florida, Nevada, Ohio, and Wisconsin. While the dealer acts in each of these states differ in various respects, they provide similar protections to existing dealers. Automotive manufacturers and dealers have been operating under these state-law dealer acts for decades.

**B.    Livonia, Village, Fox Hills, Boucher, Jim Marsh, Spitzer, BGR, And Sowell Each Operated Under Dealer Agreements With Old Chrysler.**

Livonia is a Michigan corporation that operated a dealership in Livonia, Michigan, pursuant to Sales and Service Agreements with Old Chrysler. Livonia operated its dealership under those agreements for more than 25 years.

Village is a Michigan corporation that operated a dealership in Royal Oak, Michigan, pursuant to Sales and Service Agreements with Old Chrysler. Village operated its dealership under those agreements for more than 30 years.

Fox Hills is a Michigan corporation that operated a dealership in Plymouth, Michigan, pursuant to Sales and Service Agreements with Old Chrysler.

Boucher is a Wisconsin corporation that operated a dealership in Wisconsin, pursuant to Sales and Service Agreements with Old Chrysler. Boucher operated as a Chrysler, Jeep, and Dodge dealer under those agreements for 17 years.

Jim Marsh is a Nevada corporation that operated a dealership in Nevada, pursuant to Sales and Service Agreements with Old Chrysler. Jim Marsh operated as a Chrysler, Jeep, and Dodge dealer under those agreements for 9 years.

Spitzer is an Ohio corporation that operated a dealership in Ohio, pursuant to Sales and Service Agreements with Old Chrysler.

BGR is a Florida limited liability company that operated a dealership in Florida, pursuant to Sales and Service Agreements with Old Chrysler.  BGR operated as a Chrysler, Jeep, and Dodge dealer under those agreements for 4 years.

Sowell is a California Corporation that operated a dealership in California, pursuant to Sales and Service Agreements with Old Chrysler.   Sowell operated as a Chrysler, Jeep, and Dodge dealer under those agreements for more than 14 years.

**C.     In 2009, Both Old Chrysler And Old GM Filed For Bankruptcy And Consolidated Their Dealer Networks.**

During the recent economic decline, the automotive industry was hit hard.  In the fall of 2008, a global credit crisis affecting the liquidity markets impacted the availability of loans both to dealers and consumers, resulting in the erosion of consumer confidence and a sharp drop in vehicle sales.  By the end of 2008, Old Chrysler and Old GM were both insolvent.  This resulted in unprecedented bankruptcy filings by Old Chrysler and certain of its subsidiaries in April 2009, and by Old GM in June 2009.  While both manufacturers consolidated their nationwide dealer networks in connection with these bankruptcy proceedings, they did so in different ways.

**1.     Old Chrysler's Bankruptcy Filing And Sale Of Assets To New Chrysler**

On April 30, 2009, Old Chrysler filed a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.  Rather than liquidate, Old Chrysler agreed, subject to bankruptcy court approval, to sell substantially all of its assets to a new entity formed by Fiat S.p.A. ("Fiat") under Section 363 of the Bankruptcy Code.

Section 363 of the Bankruptcy Code permits a debtor-in-possession or trustee, after notice and a hearing, to sell property of the estate outside the ordinary course of business, if the

6

bankruptcy court determines that there is a "good business reason" to do so. *See* 11 U.S.C. § 363(b); *In re Chrysler LLC*, 405 B.R. 84, 94 (S.D. N.Y. 2009) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). Section 363 also provides that, if certain requirements are met, estate property may be sold "free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f).

Here, the sale agreement provided that Old Chrysler would transfer substantially all of its operating assets to Chrysler Group, LCC ("New Chrysler"), a new entity that would be partially owned by Fiat. (*See* Sale Op. 9-10, attached as Ex. B to D.E. No. 210). The terms of this transaction were memorialized in a Master Transaction Agreement among Old Chrysler, Fiat and New Chrysler. It provided, among other things, that Old Chrysler would transfer substantially all of its operating assets to New Chrysler, including the assignment of approximately 2,400 dealer agreements. It expressly excluded from the assets transferred to New Chrysler the remaining 789 dealer agreements that Old Chrysler intended to seek approval to reject.

On May 31, 2009, the bankruptcy court authorized the proposed sale. (*See In Re Chrysler*, 405 B.R. 84 (S.D. N.Y. May 31, 2009), attached as Ex. B to D.E. No. 210). On June 2009, the bankruptcy court entered orders approving the sale and authorizing the rejection of the 789 dealer agreements. (*See* Exs. E and F to D.E. No. 210). The bankruptcy court ordered that New Chrysler would purchase the assets free and clear of any third-party claims, including any claims by Old Chrysler dealers arising from the rejection of their dealership agreements. (*See* Ex. B to D.E. No. 210 at 24-30; Ex. E to D.E. No. 210 at 17-20). On June 10, 2009, the sale closed and became final.

The dealer agreements that Livonia, Village, Fox Hills, Boucher, Jim Marsh, Spitzer,

7

BGR, and Sowell had with Old Chrysler were all rejected during the bankruptcy proceedings.

> **2.     Old GM's Bankruptcy And How It Consolidated Its Dealer Network**

Like Old Chrysler, Old GM also filed for bankruptcy and took actions to consolidate its dealer network. Old GM did so, however, in an entirely different manner.

In connection with its bankruptcy proceedings, Old GM sought to consolidate its dealer network from approximately 6,000 dealers to approximately 4,100 dealers. *See In re General Motors Corp.*, 407 B.R. 463, 513 (Bankr. S.D. N.Y. 2009).

Unlike Old Chrysler, Old GM did not reject dealer agreements under Section 363 of the Bankruptcy Code. Rather, Old GM assigned substantially all of its dealer agreements to a new legal entity, General Motors LLC ("New GM"), with specified dealer agreements subject to deferred termination ("wind down") provisions. *In re General Motors Corp.*, 407 B.R. at 513-15.

> **D.     Various Alternatives Were Considered Before Congress Enacted Section 747.**

Chrysler and GM dealers responded to these events by turning to Congress and asking for relief.

As explained in *Eagle Auto Mall Corp.*, various bills were introduced in the House of Representatives discussing the issues raised by terminated dealers that were ultimately addressed by Section 747:

> House Bill 2743 refers to itself as a bill to "restore the economic rights of automobile dealers." The language used in House Bill 2743, but ultimately rejected in the Act, states that "at the request of an automobile dealer," Chrysler and/or GM "shall *restore* the franchise agreement . . . that was in effect prior to the commencement of their respective bankruptcy cases." House Bill 2743 § 3(b) (emphasis added). Similarly, House Bill 3170 requires post-bankruptcy

automobile dealership agreements with terminated dealers "on the same terms and conditions as existed immediately before [the date of the commencement of bankruptcy proceedings]."  House Bill 3170 § 745(b).

*Eagle Auto Mall Corp. v. Chrysler Group,* LLC, 2011 WL 6754087 at * 2 (E.D. N.Y. Dec. 23, 2011).  House Bill 3170 included the following language:

> (b) Any automobile manufacturer with respect to which the Federal Government has a financial or ownership interest (or right to acquire such an interest) shall, to the extent that a valid dealer agreement existing immediately before the date of the commencement of a case under title 11 of the United States Code by such automobile manufacturer is not assumed by or assigned to another automobile manufacturer, *require any new entity created in such case to enter into a new dealer agreement with the dealer whose agreement was not so assumed or assigned, and on the same terms as existed immediately before such date.*

House Bill 3170 § 745(b) (emphasis added).

**E.     Section 747 Was Enacted And Gives Rejected Or Terminated Dealers The Right to Seek Continuation, Reinstatement, Or To Be Added To A Dealer Network Through A Statutorily-Created Arbitration Procedure.**

On December 16, 2009, Congress enacted Section 747.  Section 747 provides that a "covered dealership that was not lawfully terminated under applicable State law on or before April 29, 2009, [the day before Old Chrysler filed its bankruptcy petition], shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement, or to be added as a franchisee to the dealer network of the covered manufacturer in the geographical area where the covered dealership was located when its franchise agreement was terminated, not assigned, not renewed, or not continued."  § 747(b).

Section 747 provides that "[t]he arbitrator shall balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large and shall decide, based on that balancing, whether or not the covered

dealership should be added to the dealer network of the covered manufacturer."  Section 747 lists

various factors that the arbitrator should consider.  It further provides that "[t]he arbitrator shall

issue a written determination no later than 7 business days after the arbitrator determines that the

case has been fully submitted."

Section 747 states that the "arbitrator shall not award compensatory, punitive, or

exemplary damages to any party.  If the arbitrator finds in favor of a covered dealership, the

covered manufacturer shall as soon as practicable, but not later than 7 days after receipt of the

arbitrator's determination, provide the dealer a customary and ususal letter of intent to enter into

a sales and service agreement." § 747(e).

## F.      Several Dealers Rejected By Old Chrysler Prevailed In Section 747 Arbitrations With New Chrysler And Those Arbitration Determinations Gave Rise To This Litigation.

Because they had each operated under franchise agreements with Old Chrysler, each of

the Rejected Dealers in this action was permitted to seek arbitration under Section 747 with New

Chrysler and did so.

Livonia, Village, Fox Hills, Boucher, Jim Marsh, Spitzer, BGR, and Sowell were among

the 32 dealers across the nation that prevailed in Section 747 arbitrations with New Chrysler.[3]

In the arbitration proceeding between Livonia and New Chrysler, the arbitrator issued a

"Written Determination of Arbitrator" on July 16, 2010, that states that Livonia "shall be offered

---

[3]New Chrysler states that over 400 of Old Chrysler's former dealers, whose dealer agreements were rejected by order of the Bankruptcy Court, elected to arbitrate under Section 747. (D.E. No. 25 at 3).  New Chrysler further states that it prevailed in 76 of those arbitrations, that it did not prevail in 32 of those arbitrations, and that the remaining arbitrations were otherwise resolved.

a Letter of Intent to enter into a Sales and Service Agreement for a Chrysler-Jeep franchise with the covered manufacturer, in the manner provided for by the Act and in accordance with the terms and conditions of the Act."  (Ex. I to D.E. No. 210).

In the arbitration proceeding between Village and New Chrysler, the arbitrator issued a "Written Determination of Arbitrator" on June 15, 2010, that states that New Chrysler "shall issue Village a customary and usual letter of intent to enter into a sales and service agreement, in the manner provided for by the Act and in accordance with the terms and conditions of the Act." (Ex. I to D.E. No. 264).

In the arbitration proceeding between Fox Hills and New Chrysler, the arbitrator issued a "Written Determination of Arbitrator" on July 18, 2010, that states that New Chrysler "shall offer Claimant, as the covered dealership described in Section I, Respondent's Letter of Intent to enter into Respondent's dealer network, in the manner provided for by the Act and in accordance with the terms and conditions of the Act."  (Ex. J to D.E. No. 244).

In the arbitration proceeding between Boucher and New Chrysler, the arbitrator issued a "Written Determination of Arbitrator" on July 9, 2010, that states that Boucher "shall be added to the dealer network and therefore shall be provided the customary and usual Letter of Intent by Chrysler, in the manner provided for by the Act and in accordance with the terms and conditions of the Act."  (Ex. I to D.E. No. 229).

In the arbitration proceeding between Jim Marsh and New Chrysler, the arbitrator issued a "Written Determination of Arbitrator" on July 13, 2010, that states that Jim Marsh "shall be renewed and therefore shall be assumed by the Manufacturer, in the manner provided for by the Act and in accordance with the terms and conditions of the Act."  (Ex. I to D.E. No. 266).

11

In the arbitration proceeding between Spitzer and New Chrysler, the arbitrator issued a "Written Determination of Arbitrator" on June 23, 2010, that states that Spitzer "**shall** be **renewed** and therefore **shall** be **assumed** by the covered manufacturer, in the manner provided for by the Act and in accordance with the terms and conditions of the Act."  (Ex. I to D.E. No. 228) (bolding in original).

In the arbitration proceeding between BGR and New Chrysler, the arbitrator issued a "Written Determination of Arbitrator" on May 3, 2010, that states that BGR "**shall** be added to the roster of dealerships of Chrysler Group, LLC., the newly created and covered manufacturer. Such addition shall be limited to the Dodge brand owned and manufactured by the Chrysler Group, LLC at the time this arbitration commenced, to the extent that the Dealership described above in Section I had been a dealer for such brand at the time the franchise agreement was rejected in the bankruptcy court."  (Ex. H to D.E. No. 270) (bolding in original).

In the arbitration proceeding between Sowell and New Chrysler, the arbitrator issued a "Written Determination of Arbitrator" on June 1, 2010, that states that Sowell "**shall** be renewed and therefore **shall** be assumed by and added to the dealership network of the covered manufacturer, in the manner provided for by the Act and in accordance with the terms and conditions of the Act."  (Ex. K to D.E. No. 241) (bolding in original).

The instances in which Rejected Dealers prevailed in Section 747 arbitrations with New Chrysler have given rise to this litigation because New Chrysler, the Rejected Dealers, and other interested existing dealers, disagree as to what happens next following those arbitration rulings.

In sum, New Chrysler asserts that Section 747's sole and exclusive remedy is that the prevailing dealer receives a customary and usual letter of intent ("LOI") from New Chrysler.

12

New Chrysler contends that it has provided prevailing dealers with the required LOI's and that Section 747 does not preempt state dealer acts or allow New Chrysler to ignore the provisions of those acts.  New Chrysler further contends that Section 747 does not authorize a dealer to be "reinstated" and that any "reinstatement" could not result here in any event because these dealers never had a dealer agreement with New Chrysler.

The Rejected Dealers disagree.  Some Rejected Dealers contend that Section 747 preempts state dealer acts or that the dealer acts do not apply to them.  Some contend that the LOI's they received from New Chrysler are deficient and/or insufficient under Section 747.  Some contend that, under Section 747, they are entitled to be "reinstated" and are entitled to be placed in the same position they were in before their franchise terminated.

Other interested existing dealers have threatened to sue New Chrysler if New Chrysler establishes or relocates a dealer who prevailed in a Section 747 arbitration into their area without following applicable state dealer act provisions.

## G.  Procedural History Of This Consolidated Action

There were three separate actions pending before this Court (Case No. 10-12984, Case No. 10-13290, and Case No. 10-13908), which this Court consolidated.  New Chrysler and several dealers have settled their respective claims against each other.

### 1.  Remaining Claims

Claims asserted by certain parties to the following complaints, counter-complaints and cross-complaints remain in this action.

13

       **a.**     **Claims Between New Chrysler, Sowell, Spitzer, BGR, Boucher, Fred Martin, And Falls Motor City**

In a Complaint seeking declaratory relief filed on July 14, 2011 (D.E. No. 290),  New Chrysler seeks declaratory relief as to two groups of Defendants: 1) several Rejected Dealers who prevailed in Section 747 arbitrations with New Chrysler; and 2) some existing like-line dealers who had threatened to sue New Chrysler to prevent the establishment of dealerships (for the rejected dealers) in their areas.  New Chrysler asks the Court to declare that: 1) Section 747 does not preempt state dealer acts; 2) the LOIs provided by New Chrysler are customary and usual within the meaning of Section 747; and 3) a LOI is the sole and exclusive remedy under Section 747.  The rejected dealers named in New Chrysler's July 14, 2011 Complaint who are still parties to this action are Sowell, Spitzer, BGR, and Boucher.

Sowell filed a Counter-Complaint against New Chrysler, seeking declarative relief consistent with its position as to Section 747 (Count One) and asserting the following additional counter-claims: "Violation of 15 U.S.C. Section 1221-1225 for Lack of Good Faith in Terminating, Cancelling or Not Renewing Sowell's Franchise" (Count Two); "Injunctive Relief" (Count Three); "Statutory Violation California Vehicle Code Section 11713.3(l) and (g) and Section 747" (Count Four); "Statutory Violation of California Vehicle Code Section 11713.13" (Count Five); and "Unfair Business Practices Business and Professions Code Section 17200" (Count Six).  (D.E. No. 338).

The existing like-line dealers named in New Chrysler's July 14, 2011 Complaint who are still parties to this action include Fred Martin, Falls Motor City, and Hurley.  Falls Motor City and Fred Martin each filed cross claims against Spitzer, seeking a declaration that Section 747 is

invalid and unconstitutional or, alternatively, that Section 747 does not preempt the Ohio Dealer Act.  (D.E. Nos. 95 & 114).

### b.      Claims Between Livonia, New Chrysler, And Crestwood

Livonia's August 19, 2010 Complaint against New Chrysler and one existing like-line dealer, Crestwood, includes four counts: 1) "Count I – Declaratory Relief 28 USCA Sec. 2201," which seeks declaratory relief relating to Section 747; 2) "Count II – Violation of the Act and Confirmation / Enforcement of the Arbitration Award"; 3) "Count III – Injunction," which asks the Court to enjoin the expiration of the LOI issued to Livonia by New Chrysler; and 4) "Count IV – Punitive Damages" which asks the Court to award Livonia punitive damages for New Chrysler's alleged violation of Section 747.  (D.E. No. 1 in Case No. 10-13290).  New Chrysler filed a counterclaim seeking declaratory relief consistent with its position as to Section 747. (D.E. No. 104).

### c.      Claims Between New Chrysler, Fox Hills, Village, and Jim Marsh

In a Complaint seeking declaratory relief filed on February 9, 2011 (D.E. No. 136),  New Chrysler seeks declaratory relief as to several additional Rejected Dealers who prevailed in Section 747 arbitrations with New Chrysler and some additional existing like-line dealers who had threatened to sue New Chrysler to prevent the establishment of dealerships (for the rejected dealers) in their areas.  New Chrysler asks the Court to declare that: 1) Section 747 does not preempt state dealer acts; 2) the LOIs provided by New Chrysler are customary and usual within the meaning of Section 747; and 3) a LOI is the sole and exclusive remedy under Section 747. The Rejected Dealers named in New Chrysler's February 9, 2011 Complaint who are still parties to this action are Fox Hills, Village, and Jim Marsh.

15

Fox Hills and Village's September 9, 2010 Counter-Complaint against New Chrysler asserts the following claims: "Declaratory Relief" (Count I), wherein they seek a declaration that Section 747 preempts the Michigan Dealer Act; "Confirmation of Fox Hills' Arbitration Award" (Count II); "Confirmation of Village's Arbitration Award" (Count III); "Enforcement of Fox Hills' Arbitration Award" (Count IV); "Enforcement of Village's Arbitration Award" (Count V); and "Violation of Section 747 [ ] and Request for Monetary Damages" (Count VI). (D.E. No. 38).

Jim Marsh filed a Counter-Complaint asserting two counts: "Declaratory Relief" (Count I); and "Confirmation of Marsh's Arbitration Award" (Count II). (D.E. No. 200-2).

### 2.    Rulings Regarding Motion Practice

The above actions were consolidated in this Court's Order dated December 17, 2010. (D.E. 92). Upon consolidating the cases, the Court made several rulings regarding early motion practice and discovery.

This Court ordered that the parties may file motions to dismiss based on personal jurisdiction, subject matter jurisdiction, improper venue, insufficient process, insufficient service of process, or failure to join a party under Rule 19 at any time. Several parties filed such motions, which the Court ruled upon on May 10, 2011. (*See* D.E. No. 195).

Because the same threshold legal issues impact all parties, the Court ordered that it would hear and determine all motions to dismiss based on failure to state a claim upon which relief can be granted (and any summary judgment motions filed prior to discovery) at the same time. The Court further ordered that it would hear and determine all motions to dismiss before any discovery commences.

16

New Chrysler and several Interested Dealers contend that if the Court were to interpret Section 747 as the Rejected Dealers urge it to do, Section 747 would be unconstitutional. The United States of America ("the Government") intervened in this action to defend the constitutionality of Section 747.

**3.     Pending Dispositive Motions**

The remaining parties in this action have filed the following 15 dispositive motions, which raise several common issues:

1)   Livonia's Motion for Partial Summary Judgment (D.E. No. 193):  wherein Livonia asks the Court to declare that: a) having prevailed in a Section 747 arbitration with New Chrysler, it is entitled to be "reinstated" as a dealer in its former location; and b) Section 747 preempts the Michigan Dealer Act;

2)   New Chrysler's Cross-Motion for Summary Judgment as to Livonia (D.E. No. 210): wherein New Chrysler asks the Court to: a) grant summary judgment in favor of New Chrysler as to Count I of its counterclaim and declare that Section 747's sole and exclusive remedy is the issuance of a LOI, Section 747 does not provide for judicial "confirmation," judicial enforcement, or an award of punitive damages, and Section 747 does not preempt the Michigan Dealer Act; and b) dismiss counts I, II, III, and IV of Livonia's Complaint with prejudice;

3)   Spitzer's Motion for Summary Judgment (D.E. No. 231): wherein Spitzer asks this Court to declare that Section 747 preempts the Ohio Dealer Act, and rule that New Chrysler and other dealers waived their right to challenge Spitzer's "reinstatement";

4)   New Chrysler's Cross-Motion For Summary Judgment As To Spitzer (D.E. No. 228): wherein New Chrysler asks the Court to grant summary judgment in its favor and against Spitzer on Count One of its Second Amended Complaint and declare that Section 747 does not preempt the Ohio Dealer Act or permit New Chrysler to ignore its obligations under state law;

17

5)      Fred Martin's Motion for Partial Summary Judgment as to Spitzer (D.E. No. 215);  wherein it asks the Court to declare that Section 747 is unconstitutional or, alternatively, that Section 747 does not preempt the Ohio Dealer Act;

6)      Falls City's Motion for Partial Summary Judgment as to Spitzer (D.E. No. 247):  wherein it asks the Court to declare that Section 747 is unconstitutional or, alternatively, that Section 747 does not preempt the Ohio Dealer Act;

7)      Fox Hills and Village's Motion for Partial Summary Judgment (D.E. No. 219):  wherein they ask the Court to declare that Section 747 is Constitutional and preempts the Michigan Dealer Act;

8)      New Chrysler's Cross-Motion for Summary Judgment as to Fox Hills and Village (D.E. No. 244):  wherein it asks the Court to declare that Section 747's sole and exclusive remedy is the issuance of a LOI, Section 747 does not provide for judicial "confirmation" or enforcement, and Section 747 does not preempt the Michigan Dealer Act;

9)      Boucher's Motion for Summary Judgment (D.E. No. 220):  wherein it asks the Court to declare that Section 747 preempts the Wisconsin Dealer Act;

10)     New Chrysler's Cross-Motion for Summary Judgment as to Boucher (D.E. No. 229):  wherein it asks the Court to declare that Section 747 does not preempt the Wisconsin Dealer Act;

11)     Jim Marsh's Motion for Summary Judgment (D.E. No. 225):  wherein it asks the Court to declare that Section 747 is Constitutional and that it preempts the Nevada Dealer Act, and rule that the Nevada Dealer Act's protest provision does not apply where a terminated dealer is "reinstated" under Section 747;

12)     New Chrysler's Cross-Motion for Summary Judgment as to Jim Marsh (D.E. No. 242):  wherein it asks the Court to declare that Section 747's sole and exclusive remedy is the issuance of a LOI, Section 747 does not provide for judicial "confirmation," and Section 747 does not preempt the Nevada Dealer Act;

18

13)     New Chrysler's Motion for Summary Judgment as to Sowell (D.E. No.
        241):  wherein it asks the Court to declare that Section 747's sole and
        exclusive remedy is the issuance of a LOI, Section 747 does not provide
        for "reinstatement," and Section 747 does not preempt the California
        Dealer Act;

14)     BGR's Motion to Dismiss and/or for Summary Judgment (D.E. No. 234):
        wherein BGR asks the Court to dismiss New Chrysler's complaint against
        it, declare that Section 747 preempts the Florida Dealer Act, and rule that
        New Chrysler is not entitled to the declarations that it seeks;[4] and

15)     New Chrysler's Cross-Motion for Summary Judgment as to BGR (D.E.
        No. 243): wherein it asks the Court to declare that Section 747's sole and
        exclusive remedy is the issuance of a LOI, Section 747 does not provide
        for "reinstatement" or judicial "confirmation," and Section 747 does not
        preempt the Florida Dealer Act.

**Standard of Decision**

The above pending motions are brought pursuant to Fed. R. Civ. P. 12(b)(6) and/or Fed.

R. Civ. P. 56(c).

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must

construe the complaint in a light most favorable to the plaintiff and accept all the well-pleaded

factual allegations as true.  *Evans-Marshall v. Board of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005).

However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,

1948 (2009).  Although a heightened fact pleading of specifics is not required, the plaintiff must

bring forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

---

[4]BGR's motion also asked the Court to dismiss the action under Fed. R. Civ. P. 19 for
failure to join a required party, Hurley.  After BGR filed its motion, however, Hurley was added
as a party to this action.

*Twombly*, 550 U.S. 544, 570 (2007).  In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

## ANALYSIS

### I.   What Relief Does Section 747 Provide For Dealers Rejected By Old Chrysler Who Prevail In A Section 747 Arbitration With New Chrysler?

The pending motions raise the common issue of what relief Section 747 provides to a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler.

Thus, the first issue is one of statutory interpretation.  "[S]tatutory-interpretation analysis begins by examining 'the language of the statute itself to determine if its meaning is plain.'" *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, 654 F.3d 654, 657 (6th Cir. 2011)(quoting *Menuskin v. Williams*, 145 F.3d 755, 768 (6th Cir. 1998)).  Plain meaning is examined by looking at the language and design of the statute as a whole.  *Id.*

In doing so, the Court must give effect to each word and make "every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."  *Menuskin*, 145 F.3d at 768.

"Unless they are otherwise defined, the words in a statute 'will be interpreted as taking their ordinary, contemporary, common meaning.'" *Deutsche Bank National Trust Co. v. Tucker*,

621 F.3d 460, 462 (6th Cir. 2010) (citing *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005))*.* "When 'construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses it legislative purpose.'" *Id*.

"If the statutory language is unambiguous, 'the judicial inquiry is at an end, and the plain meaning of the text must be enforced.'" *Deutsche Bank*, 621 F.3d at 463. Conversely, if the statutory language is not clear, the Court may examine the relevant legislative history. *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008).

**A.     The Sole And Exclusive Remedy For A Dealer Rejected By Old Chrysler Who Prevails In A Section 747 Arbitration With New Chrysler Is A Customary And Usual Letter Of Intent To Enter Into A Sales And Service Agreement With New Chrysler.**

Section 747 states that the "arbitrator shall not award compensatory, punitive, or exemplary damages to any party. *If the arbitrator finds in favor of a covered dealership*, *the covered manufacturer shall* as soon as practicable, but not later than 7 days after receipt of the arbitrator's determination, *provide the dealer a customary and ususal letter of intent to enter into a sales and service agreement*." § 747(e) (emphasis added). The Act does not provide any other remedies to a covered dealer who prevails in a Section 747 arbitration. This Court concludes and declares that, under the plain language of the Act, the sole and exclusive remedy for a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler is a customary and usual letter of intent to enter into a sales and service agreement with New Chrysler.

**B.     Section 747 Does Not Provide For "Reinstatement" Of A Dealer Rejected By Old Chrysler Who Prevails In A Section 747 Arbitration With New Chrysler.**

Several Rejected Dealers contend that, because they prevailed in a Section 747

arbitration, the Act automatically entitles them to be "reinstated" to the same position they were in when Old Chrysler rejected their franchise agreements (i.e., that it unconditionally requires New Chrysler to enter into Sales and Service Agreements with them, allowing them to operate dealerships at their previous locations).  The Court rejects this proposed interpretation of the Act.[5]

Subsection (b) of Section 747 provides that a "covered dealership that was not lawfully terminated under applicable State law on or before April 29, 2009, shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement, *or* to be added as a franchisee to the dealer network of the covered manufacturer in the geographical area where the covered dealership was located when its franchise agreement was terminated, not assigned, not renewed, or not continued."  § 747(b) (emphasis added).  Thus, the Act provides that a covered dealer may seek, through a Section 747 arbitration, either:  1) continuation of a franchise agreement; 2) reinstatement of a franchise agreement; or 3) if the covered dealer's franchise agreement was terminated, to be added as a franchisee to the dealer network of the covered manufacturer.

The Court finds no ambiguity in the language of the Act.  The above language simply reflects the different legal positions of dealers terminated or rejected by Old Chrysler and Old GM.

The Rejected Dealers' interpretation of the Act ignores the critical fact that *New Chrysler*

---

[5]The Court notes that New Chrysler and several Interested Dealers assert that Section 747 would violate the Constitution, if the Court were to interpret Section 747 as the Rejected Dealers urge it to do.  Given that the Court rejects the Rejected Dealers' interpretation of the Act, the Court need not reach the Constitutional issue.

*is a legally distinct entity from Old Chrysler*.  Because the Rejected Dealers have never had franchise agreements with New Chrysler, they cannot seek either "continuation" or "reinstatement" of a franchise agreement with New Chrysler.  The only option under Section 747 for dealers rejected by Old Chrysler is to seek to be added as a franchisee to New Chrysler's dealer network.

The Act's reference to "reinstatement" and "continuation" is not superfluous because that language applies to the other covered manufacturer, New GM.  Although Old GM and New GM are legally distinct entities, Old GM assigned substantially all of its dealer agreements to New GM.  A significant number of those assigned dealer agreements included deferred termination ("wind down") provisions.  *In re General Motors Corp.*, 407 B.R. at 513-15.  That is, those assigned dealer agreements were assigned to New GM, but included provisions under which the franchise agreement would terminate at a future date.  This is significant because *GM dealers had post-bankruptcy contractual relationships with New GM.*  Therefore, a dealer whose franchise agreement with Old GM was assigned to New GM, but had a wind down provision, could seek: 1) "reinstatement" of its franchise agreement with New GM, if its agreement was terminated by New GM after assumption of the contract; or 2) "continuation" of its franchise agreement with New GM, if the dealer filed for arbitration before the wind down provision at issue took effect (i.e., if it was subject to winding down under the agreement assigned to New GM, but had not yet been terminated).

If, as the Rejected Dealers argue, the Court were to interpret the Act as requiring New Chrysler to reinstate a rejected dealer who prevailed in a Section 747 arbitration with New Chrysler to the position that dealer held when Old Chrysler terminated its franchise agreement,

23

that would render the sole remedy provided for in the Act – a customary and usual letter of intent to enter into a sales and service agreement with New Chrysler –  meaningless and superfluous. A letter of intent precedes a sales and service agreement and spells out conditions that the dealer candidates must satisfy to become a dealer.  If Congress intended that New Chrysler was unconditionally required to enter into a sales and service agreement with a prevailing dealer, there would be no reason to provide a customary and usual letter of intent to enter into a sales and service agreement.

As the Court finds no ambiguity in the Act, it is unnecessary to examine the legislative history of Section 747.  Nevertheless, even if this Court were to consider the legislative history, it supports this Court's interpretation of Section 747.  Bills introduced in the House of Representatives included language stating that: 1) covered manufacturers "shall restore the franchise agreement . . . that was in effect prior to the commencement of their respective bankruptcy cases"  H.R. 2743, 111th Cong. § 3(b) (2009); and 2) required covered manufacturers to enter into dealership agreements with terminated dealers "on the same terms and conditions as existed immediately before" the date the bankruptcy proceeding was commenced.  H.R. 3170, 111th Cong. § 745(b) (2009).  Significantly, Section 747 as ultimately enacted does not include such language.  Ostensibly, Congress considered such language but decided against it.  *Pak v. Reno*, 196 F.3d 666, 676 (6th Cir. 1999).  "Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language."  *INS v. Cardoza-Fonseca*, 480 U.S. 421. 442-43 (1987) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 392-93 (1980)).

24

Accordingly, the Court concludes and declares that Section 747 does not provide for "reinstatement" of a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler.

### C.      Section 747 Does Not Authorize An Award of Monetary Damages.

Section 747 expressly states that the "arbitrator *shall not* award compensatory, punitive, or exemplary damages to any party." § 747(e) (emphasis added).  In keeping with the express terms of the Act, none of the Rejected Dealers who prevailed in Section 747 arbitrations with New Chrysler were awarded[6] any kind of monetary damages in arbitration.

Nevertheless, several Rejected Dealers now seek monetary damages from New Chrysler under Section 747.  (*See, e.g.*, Count IV of Livonia's Complaint, seeking punitive damages for New Chrysler's alleged violation of the Act; Count VI of Fox Hills and Village's Counter-Complaint, seeking monetary damages for New Chrysler's alleged violation of the Act).

The Court declares that Section 747 does not authorize an award of monetary damages. Accordingly, all claims seeking monetary damages for alleged violations of the Act shall be dismissed.

### D.      Section 747 Does Not Provide For Judicial Confirmation Or Enforcement And Neither The FAA Nor The AAA's Commercial Rules Govern These Statutorily-Mandated Arbitrations Or Authorize A Party To Move To Confirm An Arbitrator's Determination In A Section 747 Arbitration.

Several Rejected Dealers ask this Court to confirm and/or enforce their arbitration awards.  (*See, e.g.*, Count II of Livonia's Complaint, "Violation of the Act and Confirmation /

---

[6]Indeed, none of them received an arbitration "award" at all.  Rather, each of the arbitrations resulted in a "Written Determination of Arbitrator."

Enforcement of the Arbitration Award"; Counts II & III of Fox Hills and Village's Counter-Complaint, seeking confirmation of arbitration awards and asking the Court to "enter an Order confirming the Written Determination/Award[s] of the Arbitrator," "enter final Judgment in favor of" Fox Hills and Village, "adjudging, unconditionally, that, as long as [they] meet the contractual obligations of the[ir] franchise agreement[s] prior to Chrysler's bankruptcy rejection," they "shall be restored to Chrysler's dealer network" and that their "most recent Sales and Service Agreement(s) be reinstated/renewed."; Counts IV & V of Fox Hills and Village's Counter-Complaint, seeking an order "enforcing the Written Determination/Award[s]" of the arbitrators, and entering final judgment in favor of Fox Hills and Village, "adjudging, unconditionally, that, as long as [they meet] the contractual obligations of the franchise agreement[s] prior to Chrysler's bankruptcy rejection, [their] franchises shall be continued or reinstated" and their "most recent Sales and Service Agreement(s) be renewed."; Count II of Jim Marsh's Counter-Complaint, seeking substantially similar relief).

The pleadings setting forth requests for confirmation or enforcement do not specify the alleged authority for seeking confirmation or enforcement of the arbitrators' determinations.

### 1. Section 747 Does Not Authorize A Party To Move To Confirm Or Vacate An Arbitrator's Determination.

It is undisputed that the arbitrations at issue took place pursuant to Section 747. Congress, however, did not provide in Section 747 any authority under which a party can appeal, or move to vacate, confirm, enjoin, or stay, an arbitrator's determination in a Section 747 arbitration, although it certainly could have done so. "Where Congress does not provide relief that it clearly knows how to provide, it is understood to have deliberately chosen not to provide

that relief." *Tysinger Motor Co., Inc. v. Chrysler Group, LLC*, 2011 WL 63866 (E.D. Va. Jan. 7, 2011) (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 485 (1996)).[7]

### 2.    The FAA Does Not Apply To These Statutorily-Mandated Arbitrations Or Authorize A Party To Move To Confirm An Arbitrator's Determination In A Section 747 Arbitration.

To the extent that any of the Rejected Dealers contend that they may seek confirmation under the Federal Arbitration Act, that argument also fails.

Section 747 makes no reference to the Federal Arbitration Act.  Moreover, it is well established that "[a]rbitration under the Federal Arbitration Act is 'a matter of consent, not coercion." *Albert M. Higley Co. V. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).  The Federal Arbitration Act ("FAA") applies, and authorizes a party to seek judicial confirmation of an arbitration award, only where the parties have contractually agreed to submit their dispute to arbitration and agreed that a judgment should be entered upon the award.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-220, 105 S.Ct. 1238 (1985) (The purpose of the FAA is to enforce privately negotiated agreements to arbitrate); *see also* 9 U.S.C. § 9, which governs confirmation of arbitration awards under the FAA, and provides that a party can apply to the court for an order confirming an arbitration award "[i]f the

---

[7]Even if the Act did provide that this Court could confirm an arbitrator's determination in a Section 747 arbitration, the "confirmation" requested by several Rejected Dealers goes far beyond confirming the arbitrators' actual determinations.  Although couched in terms of "confirmation" or "enforcement," some of the requests, in substance, ask the Court to affirmatively grant relief not provided under the Act – "reinstatement" to the same position they were in when Old Chrysler rejected their franchise agreements.

27

parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration.").

Here, New Chrysler and the Rejected Dealers did not enter into agreements to arbitrate and the arbitration was not a matter of consent. Rather, Section 747 required New Chrysler to arbitrate with the Rejected Dealers. Because the parties did not contractually agree to arbitrate, the FAA does not apply to these statutorily-mandated arbitrations and it therefore does not authorize a party to move to confirm an arbitrator's determination in a Section 747 arbitration.

> **3.** **The Commercial Rules Of The AAA Do Not Govern Section 747 Arbitrations And Do Not Authorize A Party To Move To Confirm An Arbitrator's Determination.**

In its motion, BGR asserts that it is entitled to seek confirmation pursuant to Rule 48 of the Commercial Rules of the American Arbitration Association ("AAA"). (D.E. No. 234 at 11). This argument also fails.

The only reference that Section 747 makes to the AAA is the provision governing how the arbitrator is to be selected:

> The arbitrator shall be selected from the list of qualified arbitrators maintained by the Regional Office of the American Arbitration Association (AAA), in the Region where the dealership is located, by mutual agreement of the covered dealership and covered manufacturer. If agreement cannot be reached on a suitable arbitrator, the parties shall request AAA to select the arbitrator.

§ 747(e).

Although Congress certainly could have drafted Section 747 to do so, Section does not provide that Section 747 arbitrations are governed by the Commercial Rules of the AAA.

Not only does Section 747 not reference or incorporate the Commercial Rules of the

28

AAA, the Act expressly provides the procedures to be followed in a Section 747 arbitration –

many of which are contrary to the Commercial Rules of the AAA.  For example, Rule 43 of the

Commercial Rules of the AAA authorizes the arbitrator to "grant any remedy or relief that the

arbitrator deems just and equitable and within the scope of the agreement of the parties . . ." and

to award and apportion fees and expenses, while Section 747 expressly provides that the

arbitrator "shall not award compensatory, punitive, or exemplary damages to any party" and that

the "parties shall be responsible for their own expenses, fees, and costs."  Rule 43 of Commercial

Rules of AAA; § 747 (e).

Moreover, the Commercial Rules of the AAA themselves provide that the rules govern an

arbitration only if the parties have an agreement to arbitrate and that agreement provides for

arbitration by the AAA.  *See* Rule 1 of Commercial Rules of AAA ("The parties shall be deemed

to have made these rules a part of their arbitration agreement whenever they have *provided for*

*arbitration by the American Arbitration Association* (hereinafter AAA) under its Commercial

Arbitration Rules").

New Chrysler and BGR did not enter into an agreement to arbitrate.  Rather, Section 747

required New Chrysler to arbitrate with BGR.  Because the parties did not contractually agree to

arbitrate, and thus do not have an agreement to arbitrate that provides for arbitration by the AAA,

the Commercial Rules of the AAA do not apply and the FAA does not authorize BGR to move to

confirm the arbitrator's determination.

Accordingly, the Court concludes and declares that Section 747 does not provide for

judicial confirmation or enforcement and neither the FAA nor the AAA's Commercial Rules

govern these statutorily-mandated arbitration or authorize a party to move to confirm an

29

arbitrator's determination in a Section 747 arbitration.

## II.    Does Section 747 Preempt State Dealer Acts?

The Rejected Dealers contend that Section 747 preempts the state dealer acts that govern the relationships between automobile manufacturers and dealers in California (Cal. Vehicle Code § 3060 *et seq*.), Florida (Fla. Stat. § 320.01 *et seq*.), Michigan (Mich. Comp. Laws § 445.1561 *et seq*.), Nevada (Nev. Rev. Stat. § 482.36311 *et seq*.), Ohio (Ohio Rev. Code. § 4517.43), and Wisconsin (Wis. Stat § 218.0101 *et seq*.) (collectively, the "State Dealer Acts").

The Court's resolution of this issue must be guided by "two cornerstones" of preemption jurisprudence. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).  First, the purpose of Congress is "the ultimate touchstone" in every preemption case.  *Id*. (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  Second, in every preemption case, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, the Court starts with the "'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"  *Wyeth,* 555 U.S. at 565 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

"Preemption can be express or implied. Express preemption occurs when Congress 'explicitly state[s]' that it intends a statute to have that effect.  *Fednav, Ltd. v. Chester*, 547 F.3d 607, 618 (6th Cir. 2008) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)).  As explained by the Sixth Circuit, implied preemption comes in two forms, field and conflict preemption:

> Field preemption occurs when "the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Ohio Mfrs. Assoc. v. City of Akron,* 801 F.2d

30

824, 828 (6th Cir. 1986) (quoting *Hillsborough County, Fla. v. Automated Medical Labs., Inc*., 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 179 (1978)). Conflict preemption occurs when a provision of state law "actually conflicts with federal law." *City of Akron*, 801 F.2d at 828.

*Fednav,* 547 F.3d at 618-19.

There is no express preemption here because Congress did not expressly state in Section 747 that it is intended to preempt any State Dealer Acts.  In addition, the Rejected Dealers do not argue that field preemption, which occurs when the scheme of federal regulation is sufficiently comprehensive such that it is reasonable to infer that Congress "left no room" for state regulation, is present.[8]

The Rejected Dealers contend that Section 747 preempts State Dealer Acts by virtue of conflict preemption.

Conflict preemption "arises when 'compliance with both federal and state regulations is a physical impossibility,' *Florida Line & Avacado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217-18, 10 L.Ed. 248 (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)." *Ohio Mfrs. Ass'n v. City of Akron*, 801 F.2d 824, 828 (6th Cir. 1986).

The Rejected Dealers assert that the purpose and objective of Section 747 is to "reinstate" any dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler

---

[8]And even if they did make that argument, this Court would reject it.  Section 747, which consists of six pages and provides a limited remedy and a limited time-frame for arbitrations, is not the type of comprehensive regulation that leaves no room for state regulation.

by requiring to New Chrysler to unconditionally enter into a sales and service agreement with that dealer. (*See e.g.*, D.E. No. 220 at 14) ("Congress clearly intended that a covered dealership which prevailed in its arbitration under the statute would be added to the covered manufacturer's dealer network by entering into a sales and service agreement with the covered manufacturer for the franchises formerly held by the covered dealerships.").  They contends that any State Dealer Act provision they prevents or delays that from occurring is an obstacle to Section 747's purpose and objective and therefore conflict preemption arises.

The Rejected Dealers also contend that, because a dealer who prevails in a Section 747 arbitration is entitled to be unconditionally reinstated (i.e., New Chrysler must enter unconditionally enter into a sales and service agreement with that dealer), complying with both Section 747 and the relevant State Dealer Act is impossible.  *(See e.g.*, D.E. No. 193 at 4) ("A State Court could rule that, although a covered dealership prevailed under the Arbitration under the Act and was entitled to Reinstatement, the dealership is not allowed under State Law.").  In essence, the Rejected Dealers assert that, under Section 747, they won the unconditional right to enter into sales and service agreements with New Chrysler and therefore compliance with both Section 747 and any state-law provision in a Dealer Act that may prevent or delay that result is impossible.

Both of these arguments are premised on the Rejected Dealers' proposed interpretation of the Act.  As set forth *supra*, this Court rejects that interpretation of Section 747.  "In light of the importance of congressional intent to preemption analysis," the Court again notes that the legislative history does not support the Rejected Dealer's interpretation of the Act.  *Millsaps v. Thompson*, 259 F.3d 535, 547 (6th Cir. 2001).  Bills introduced in the House of Representatives

32

included reinstatement language or language requiring covered manufacturers to enter into
dealership agreements with terminated dealers "on the same terms and conditions as existed
immediately before" the date the bankruptcy proceeding was commenced, but Section 747 as
enacted does not include such language.  Congress's rejection of such language persuades this
Court that the purpose and objective of Section 747 is not to "reinstate" or unconditionally
require New Chrysler to enter into a sales and service agreement with any dealer who prevails in
a Section 747 arbitration.  "Congress does not intend *sub silentio* to enact statutory language that
it has earlier discarded in favor of other language."  *INS v. Cardoza-Fonseca*, 480 U.S. at 442-43
(quoting *Nachman Corp.*, 446 U.S. at 392-93).

This Court agrees with New Chrysler that Congress intended to provide dealers that had
been rejected by Old Chrysler an opportunity to be added to New Chrysler's dealer network by
means of a letter of intent to enter into a sales and service agreement.  A letter of intent precedes
a sales and service agreement and spells out conditions that the dealer candidates must satisfy to
become a dealer.  Congress could have drafted Section 747 to require that New Chrysler enter
into sales and service agreement with any dealer that prevailed in a Section 747 arbitration – but
it chose not to do so.  The Court agrees that Section 747's limited remedy was carefully crafted
by Congress such that it would not conflict with the State Dealer Acts that have governed this
area for decades.[9]

---

[9]Some Rejected Dealers also assert that the provisions of the State Dealer Acts in effect in
their respective states simply do not apply to them because they are being "reinstated" rather than
being added to the dealer network.  For example, Mich. Comp. Laws § 445.1576 provides that
before a manufacturer enters into a dealer agreement "establishing or relocating a new motor
vehicle dealer within a relevant market area where the same line is represented," the
manufacturer must provide written notice of its intent to do so to the existing dealers in that
market area.  Livonia argues that § 445.1576 does not apply to it because it is entitled to be

Accordingly, the Court concludes that Section 747 does not preempt the State Dealer Acts.

## III.    Remaining Claims

The above rulings do not dispose of all claims in this action.  Like the situation in *Eagle Auto Mall Corp., supra*, several Rejected Dealers assert that New Chrysler has not provided them the statutory customary and usual letter of intent to enter into franchise agreements.

Count Two of New Chrysler's July 14, 2001 Complaint for Declaratory Relief New Chrysler asks the Court to declare that the LOIs provided by New Chrysler to Sowell is New Chrysler's customary and usual LOI and is in compliance with Section 747.  Count One of Sowell's Counter-Complaint against New Chrysler seeks a declaration that the LOI New Chrysler provided to Sowell is not a customary and usual LOI in compliance with Section 747.[10]

Livonia's complaint seeking declaratory relief also includes a request that the Court declare that the LOI New Chrysler provided to Livonia is not a customary and usual LOI in compliance with Section 747.  Among other things, Livonia's Complaint alleges that the LOI provided to it by New Chrysler contains a provision that, in violation of the Michigan Dealer Act, states that Livonia will not protest if a new dealer is added in its market.

In addition, Count II of New Chrysler's February 9, 2011 Complaint for Declaratory

--------

"reinstated" and it therefore is not being "established" in the market area at issue.  All such arguments fail because they are also based on a proposed interpretation of the Act that this Court rejects.


[10]Sowell's Counter-Complaint also contains other claims that have not yet been challenged in a motion for summary judgment.  (Counts Two through Six of Sowell's Counter-Complaint).  These claim also remain pending in this action.

Judgment against Fox Hills, Village, and Jim Marsh asks the Court to declare that the LOIs New Chrysler issued to Fox Hills, Village, and Jim Marsh are New Chrysler's customary and usual LOIs and comply with the Act.

Given the Court's rulings above, these dealers are now foreclosed from arguing that the statutorily required LOI must express the terms of their pre-bankruptcy status. Nevertheless, as in *Eagle Auto Mall Corp.*, there remains an open question as to whether the letters of intent provided to the Rejected Dealers constitute the customary and usual letters of intent required by the Act.[11] And as the Rejected Dealers stress, they have not yet had any discovery on the issue.

Accordingly, the Court shall hold a Status / Scheduling Conference, to discuss the status of the remaining claims and the most efficient method of adjudicating those claims.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that all motions requesting oral argument on the pending motions to dismiss and/or for summary judgment (D.E. Nos. 355 & 360) are DENIED.

IT IS FURTHER ORDERED that, for the reasons set forth above, this Court hereby DECLARES that:

1)    The sole and exclusive remedy for a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler is a customary and usual letter of intent to enter into a sales and service agreement with New Chrysler.

2)    Section 747 does not provide for reinstatement of a dealer rejected by Old

---

[11]New Chrysler agrees that the rejected dealers who obtained a favorable decision in arbitration can seek, in this action, to enforce the remedy provided under Section 747. (*See, e.g.*, D.E. No. 242 at n.6).

Chrysler who prevails in a Section 747 arbitration with New Chrysler.

3)    Section 747 does not authorize an award of monetary damages.

4)    Section 747 does not provide for judicial confirmation or enforcement and neither the FAA nor the AAA's Commercial Rules govern these statutorily-mandated arbitrations or authorize a party to move to confirm an arbitrator's determination in a Section 747 arbitration.

5)    Section 747 does not preempt the state dealer acts that govern the relationships between automobile manufacturers and dealers in California (Cal. Vehicle Code § 3060 *et seq*.), Florida (Fla. Stat. § 320.01 *et seq*.), Michigan (Mich. Comp. Laws § 445.1561 *et seq*.), Nevada (Nev. Rev. Stat. § 482.36311 *et seq*.), Ohio (Ohio Rev. Code. § 4517.43), or Wisconsin (Wis. Stat § 218.0101 *et seq*.).

IT IS FURTHER ORDERED that New Chrysler's motions for summary judgment, seeking summary judgment as to its July 14, 2011 Complaint for Declaratory Judgment against Spitzer, BGR and Boucher (D.E. Nos. 228, 243 & 229) are GRANTED.   The cross-motions for summary judgment filed by Spitzer, BGR, and Boucher (D.E. Nos. 231, 234, & 220) are DENIED.

IT IS FURTHER ORDERED that the motions for partial summary judgment filed by Fred Martin and Falls City (D.E. Nos. 215 & 247) are GRANTED as to Counts Two of their Cross-Complaints and are DENIED in all other respects.

IT IS FURTHER ORDERED that New Chrysler's motion for summary judgment, seeking summary judgment as to its July 14, 2011 Complaint for Declaratory Judgment against Sowell is GRANTED with respect to Counts One and Three of New Chrysler's Complaint but is DENIED WITHOUT PREJUDICE as to Count Two.

IT IS FURTHER ORDERED that Livonia's Motion for Partial Summary Judgment (D.E.

No. 193) is DENIED.

IT IS FURTHER ORDERED that New Chrysler's Cross-Motion for Summary Judgment as to Livonia is GRANTED IN PART AND DENIED IN PART.  The motion is DENIED WITHOUT PREJUDICE to the extent that New Chrysler seeks a declaration that the LOI New Chrysler provided to Livonia is New Chrysler's customary and usual LOI and is in compliance with Section 747, and DENIED WITHOUT PREJUDICE with respect to New Chrysler's request to dismiss that portion of Count I of Livonia's complaint seeking a declaration that the LOI New Chrysler issued does not comply with the Act.  The motion is GRANTED in all other respects.

Accordingly, Counts II, III, and IV of Livonia's complaint are DISMISSED.  Count I is also DISMISSED, with exception of the portion of Count I that asserts a challenge to the LOI provided to Livonia by New Chrysler.

IT IS FURTHER ORDERED that New Chrysler's motions for summary judgment, seeking summary judgment as to its February 9, 2011 Complaint for Declaratory Judgment against Fox Hills, Village, and Jim Marsh (D.E. Nos. 244 & 242) are GRANTED to the extent that summary judgment is granted in favor of New Chrysler as to Count I.  The motions are DENIED WITHOUT PREJUDICE as to Count II, which asks the Court to declare that the LOIs New Chrysler issued to Fox Hills, Village, and Jim Marsh are New Chrysler's customary and usual LOIs and comply with the Act.

IT IS FURTHER ORDERED that the cross-motions for summary judgment filed by Village, Fox Hills, and Jim Marsh (D.E. Nos. 219 & 225) are DENIED and Village, Fox Hills, and Jim Marsh's counter-complaints are DISMISSED.

IT IS FURTHER ORDERED that the Court shall hold a Status / Scheduling Conference

on **May 14, 2012 AT 3:00 p.m.,** to discuss the most efficient method of adjudicating the

remaining claims in this action.

      IT IS SO ORDERED.

S/Sean F. Cox                      
Sean F. Cox
United States District Judge

Dated:  March 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on
March 27, 2012, by electronic and/or ordinary mail.

S/Jennifer Hernandez               
Case Manager
