UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Chrysler Group LLC,

      Plaintiff,

v.                                                            Case No. 10-12984

South Holland Dodge, Inc., *et al.,*                    Honorable Sean F. Cox

      Defendants;

        *Consolidated with*

Livonia Chrysler Jeep, Inc., a Michigan
for profit corporation,

      Plaintiff,
v.                                                            Case No. 10-13290

Chrysler Group, LLC, *et al.*,                          Honorable Sean F. Cox

      Defendants;

        *Consolidated with*

Chrysler Group LLC,

      Plaintiff,

v.                                                            Case No. 10-13908

Sowell Automotive, Inc., *et al.*,                      Honorable Sean F. Cox

      Defendants.
_____/

**<u>OPINION & ORDER</u>**

Following the 2009 bankruptcies of Chrysler LLC ("Old Chrysler") and General Motors

1

Corporation ("Old GM"), and actions taken to consolidate their respective dealer networks, Congress enacted Section 747 of the Consolidated Appropriations Act of 2010, Pub. L. No. 111-117 ("Section 747"). That Act was passed to grant certain arbitration rights to dealerships that were rejected or terminated in connection with the those bankruptcies. Several dealers who had been rejected by Old Chrysler initiated, and prevailed in, Section 747 arbitrations with Chrysler Group LLC ("New Chrysler"). Those arbitration determinations gave rise to this litigation because the parties disagree as to what happens next following those Section 747 arbitration determinations.

In addition to New Chrysler, there are two different groups of dealers who became parties to this action. First, eight dealers whose franchise agreements were rejected by Old Chrysler and who prevailed in Section 747 arbitrations with New Chrysler became parties[1] in these consolidated actions: 1) Livonia Chrysler Group LLC ("Livonia"); 2) Village Chrysler Jeep, Inc. d/b/a Village Automotive Center ("Village"); 3) Fox Hills Motor Sales, Inc. d/b/a Fox Hills Chrysler Jeep ("Fox Hills"); 4) Boucher Imports, Inc. d/b/a Frank Boucher Chrysler ("Boucher"); 5) Jim Marsh American Corp. ("Jim Marsh"); 6) Spitzer Autoworld Akron, LLC ("Spitzer"); 7) BGR, LLC d/b/a Deland Dodge ("BGR"); and 8) Sowell Automotive, Inc., d/b/a Dodge City Chrysler Jeep ("Sowell") (collectively, the "Rejected Dealers"). Second, there are a number of existing dealers who became parties because they oppose New Chrysler establishing or relocating a dealer who prevailed in a Section 747 arbitration into their area without following the provisions of state-law dealer acts ("Interested Dealers").

---

[1]New Chrysler and a number of other dealers resolved their respective claims against each other.

In March of 2012, this matter came before the Court on multiple motions to dismiss and motions for summary judgment, filed by the parties prior to discovery. In these motions, the parties raised the common threshold issue of what relief is provided by Section 747 to a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler. The motions also raised the common issue of whether Section 747 preempts state-law dealer acts. In an Opinion & Order issued on March 27, 2012 (Docket Entry No. 361), this Court declared that:

1)  The sole and exclusive remedy for a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler is a customary and usual letter of intent ("LOI") to enter into a sales and service agreement with New Chrysler;

2)  Section 747 does not provide for reinstatement of a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler;

3)  Section 747 does not authorize an award of monetary damages;

4)  Section 747 does not provide for judicial confirmation or enforcement and neither the FAA nor the AAA's Commercial Rules govern these statutorily-mandated arbitrations or authorize a party to move to confirm an arbitrator's determination in a Section 747 arbitration; and

5)  Section 747 does not preempt the state-law dealer acts that govern the relationships between automobile manufacturers and dealers in California (Cal. Vehicle Code § 3060 *et seq*.), Florida (Fla. Stat. § 320.01 *et seq*.), Michigan (Mich. Comp. Laws § 445.1561 *et seq*.), Nevada (Nev. Rev. Stat. § 482.36311 *et seq*.), Ohio (Ohio Rev. Code. § 4517.43), or Wisconsin (Wis. Stat § 218.0101 *et seq*.).

(*Id*. at 3-4).

This Court's March 27, 2012 Opinion & Order also explained that the above rulings did not dispose of all claims and counter-claims in this action:

The above rulings do not dispose of all claims in this action. Like the situation in *Eagle Auto Mall Corp., supra*, several Rejected Dealers assert that New Chrysler has not provided them the statutory customary and usual letter of intent to

enter into franchise agreements.

Count Two of New Chrysler's July 14, 2001 Complaint for Declaratory Relief New Chrysler asks the Court to declare that the LOIs provided by New Chrysler to Sowell is New Chrysler's customary and usual LOI and is in compliance with Section 747. Count One of Sowell's Counter-Complaint against New Chrysler seeks a declaration that the LOI New Chrysler provided to Sowell is not a customary and usual LOI in compliance with Section 747.

Livonia's complaint seeking declaratory relief also includes a request that the Court declare that the LOI New Chrysler provided to Livonia is not a customary and usual LOI in compliance with Section 747. Among other things, Livonia's Complaint alleges that the LOI provided to it by New Chrysler contains a provision that, in violation of the Michigan Dealer Act, states that Livonia will not protest if a new dealer is added in its market.

In addition, Count II of New Chrysler's February 9, 2011 Complaint for Declaratory Judgment against Fox Hills, Village, and Jim Marsh asks the Court to declare that the LOIs New Chrysler issued to Fox Hills, Village, and Jim Marsh are New Chrysler's customary and usual LOIs and comply with the Act.

Given the Court's rulings above, these dealers are now foreclosed from arguing that the statutorily required LOI must express the terms of their pre-bankruptcy status. Nevertheless, as in *Eagle Auto Mall Corp*., there remains an open question as to whether the letters of intent provided to the Rejected Dealers constitute the customary and usual letters of intent required by the Act. And as the Rejected Dealers stress, they have not yet had any discovery on the issue.

Accordingly, the Court shall hold a Status / Scheduling Conference, to discuss the status of the remaining claims and the most efficient method of adjudicating those claims.

(*Id*. at 34-35). Thereafter, the Court held conferences with the parties and the Court ultimately issued a Scheduling Order allowing for discovery and then the filing of motions for summary judgment. That order was based upon the parties' agreement as to how to proceed.

The matter is now before the Court on two summary judgment motions: 1) Livonia's Motion for Summary Judgment, wherein Livonia asks the Court to rule that the LOI it was issued by New Chrysler is not New Chrysler's "customary and usual" LOI and it is not in compliance with the Act (Docket Entry No. 428); and 2) New Chrysler's Motion for Summary Judgment, wherein it asks the Court to rule that, with respect to all of the claims of Rejected Dealers, there

4

is no genuine issue of material fact that they were provided LOIs that were customary and usual, in compliance with Section 747.

As explained below, with respect to the remaining claims in this action, the sole issue is whether New Chrysler issued the remaining Rejected Dealers its "customary and usual" LOI to enter into a sales and service agreement. This Court agrees with the reasoning of the two other federal district courts that have addressed the issue and concludes that the inquiry before the Court is a narrow one. The Court must compare the LOIs issued to the remaining Rejected Dealers against the "relevant universe" of LOIs issued by New Chrysler. And that "relevant universe" of LOIs consists of: 1) LOIs issued by New Chrysler, not Old Chrysler; 2) LOIs issued to new dealer candidates, not existing dealers seeking to add a new line or relocate; and 3) LOIs that were issued from the time that New Chrysler started operating in January 2009, through July 2010 (when the last of the LOIs were issued to the remaining Rejected Dealers).

This Court then has to consider, applying that standard, whether the issue must be resolved by the trial of fact. As explained below, it is undisputed that any trial as to this issue would be a bench trial – not a jury trial. (*See* 3/15/13 Hrg. Tr.). Moreover, New Chrysler's Motion for Summary Judgment is based upon a Declaration from John Tangeman and an attached chart that analyzes the relevant universe of LOIs issued by New Chrysler. But, as several Rejected Dealers note, his deposition testimony conflicts with some of the statements in his Declaration – as to which LOIs were included in the analysis. Given that, and the fact that any trial would be a bench trial, this Court shall deny the pending Motions for Summary Judgment and shall proceed with a bench trial.

# BACKGROUND

This case has a fairly lengthy background, which is more fully set forth in this Court's March 27, 2012, Opinion & Order.  Below is a summary of the factual background, and more specific facts that relate to the pending motions.

For decades, various state-law dealer acts have provided certain protections for existing dealers and allow them to challenge a manufacturer's decision to establish or relocate another dealer into a given area.[2]  Such state-law dealer acts exist in Michigan, California, Florida, Nevada, Ohio, and Wisconsin.  While the dealer acts in each of these states differ in various respects, they provide similar protections to existing dealers.  Automotive manufacturers and dealers have been operating under these state-law dealer acts for decades.

Livonia, Village, Fox Hills, Boucher, Jim Marsh, Spitzer, BGR, and Sowell each operated under Dealer Agreements with Old Chrysler.

In 2009, both Old Chrysler and Old GM filed for bankruptcy and consolidated their dealer networks.  While both manufacturers consolidated their nationwide dealer networks in connection with these bankruptcy proceedings, they did so in different ways.

Unlike Old Chrysler, Old GM assigned its existing dealer agreements to the GM entity

---

[2]For example, in 1981, Michigan enacted Mich. Comp. Laws § 445.1561 *et seq*. ("the Michigan Dealer Act").  Among other things, the Michigan Dealer Act provides protections for existing dealers.  It regulates a manufacturer's establishment or relocation of a dealership within a relevant market area where the same line make is already represented.  *See* Mich. Comp. Laws § 445.1566 & § 445.1576.  Before a manufacturer can establish or relocate a dealer into a relevant market area ("RMA"), the manufacturer must do certain things – such as give written notice to existing dealers within the RMA of its intention to establish or relocate another dealer to the RMA.  Those existing dealers can then challenge that action by filing a declaratory action in circuit court, to determine if good cause exists for the establishment or relocation of the dealer.

emerging from bankruptcy, subject to "winding down" provisions.

Old Chrysler took a different approach.  On April 30, 2009, Old Chrysler filed a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code. Rather than liquidate, Old Chrysler agreed, subject to bankruptcy court approval, to sell substantially all of its assets to a new entity formed by Fiat S.p.A. ("Fiat") under Section 363 of the Bankruptcy Code.

The sale agreement provided that Old Chrysler would transfer substantially all of its operating assets to Chrysler Group, LCC ("New Chrysler"), a new entity that would be partially owned by Fiat.  (*See* Sale Op. 9-10, attached as Ex. B to D.E. No. 210).  The terms of this transaction were memorialized in a Master Transaction Agreement among Old Chrysler, Fiat and New Chrysler.  It provided, among other things, that Old Chrysler would transfer substantially all of its operating assets to New Chrysler, including the assignment of approximately 2,400 dealer agreements.  It expressly excluded from the assets transferred to New Chrysler the remaining 789 dealer agreements that Old Chrysler intended to seek approval to reject.

On May 31, 2009, the bankruptcy court authorized the proposed sale.  (*See In Re Chrysler*, 405 B.R. 84 (S.D. N.Y. May 31, 2009), attached as Ex. B to D.E. No. 210).  On June 2009, the bankruptcy court entered orders approving the sale and authorizing the rejection of the 789 dealer agreements.  (*See* Exs. E and F to D.E. No. 210).  The bankruptcy court ordered that New Chrysler would purchase the assets free and clear of any third-party claims, including any claims by Old Chrysler dealers arising from the rejection of their dealership agreements.  (*See* Ex. B to D.E. No. 210 at 24-30; Ex. E to D.E. No. 210 at 17-20).  On June 10, 2009, the sale closed and became final.

7

The dealer agreements that Livonia, Village, Fox Hills, Boucher, Jim Marsh, Spitzer, BGR, and Sowell had with Old Chrysler were all rejected during the bankruptcy proceedings.

Chrysler and GM dealers responded to these events by turning to Congress and asking for relief.

On December 16, 2009, Congress enacted Section 747. Section 747 provides that a "covered dealership that was not lawfully terminated under applicable State law on or before April 29, 2009, [the day before Old Chrysler filed its bankruptcy petition], shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement, or to be added as a franchisee to the dealer network of the covered manufacturer in the geographical area where the covered dealership was located when its franchise agreement was terminated, not assigned, not renewed, or not continued."  § 747(b).

Section 747 provides that "[t]he arbitrator shall balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large and shall decide, based on that balancing, whether or not the covered dealership should be added to the dealer network of the covered manufacturer."  Section 747 lists various factors that the arbitrator should consider.  It further provides that "[t]he arbitrator shall issue a written determination no later than 7 business days after the arbitrator determines that the case has been fully submitted."

Section 747 states that the "arbitrator shall not award compensatory, punitive, or exemplary damages to any party.  If the arbitrator finds in favor of a covered dealership, the covered manufacturer shall as soon as practicable, but not later than 7 days after receipt of the arbitrator's determination, provide the dealer a customary and ususal letter of intent to enter into

8

a sales and service agreement." § 747(e).

Because they had each operated under franchise agreements with Old Chrysler, each of the Rejected Dealers in this action was permitted to seek arbitration under Section 747 with New Chrysler and did so. Livonia, Village, Fox Hills, Boucher, Jim Marsh, Spitzer, BGR, and Sowell were among the 32 dealers across the nation that prevailed in Section 747 arbitrations with New Chrysler.

The instances in which Rejected Dealers prevailed in Section 747 arbitrations with New Chrysler gave rise to this litigation because New Chrysler, the Rejected Dealers, and other interested existing dealers, disagreed as to what happens next following those arbitration rulings.

In sum, New Chrysler claimed that Section 747's sole and exclusive remedy is that the prevailing dealer receives a customary and usual LOI from New Chrysler. New Chrysler contends that it has provided prevailing dealers with the required LOI's and that Section 747 does not preempt state dealer acts or allow New Chrysler to ignore the provisions of those acts. New Chrysler further contends that Section 747 does not authorize a dealer to be "reinstated" and that any "reinstatement" could not result here in any event because these dealers never had a dealer agreement with New Chrysler.

The Rejected Dealers disagreed. Some Rejected Dealers claimed that Section 747 preempts state dealer acts or that the dealer acts do not apply to them. Some took the position that the LOI's they received from New Chrysler are deficient and/or insufficient under Section 747. Some took the position that, under Section 747, they are entitled to be "reinstated" and are entitled to be placed in the same position they were in before their franchise terminated.

In March of 2012, this matter came before the Court on multiple motions, filed by the

9

parties prior to discovery.  In these motions, the parties raised the common threshold issue of

what relief is provided by Section 747 to a dealer rejected by Old Chrysler who prevails in a

Section 747 arbitration with New Chrysler.  The motions also raised the common issue of

whether Section 747 preempts state-law dealer acts.  In an Opinion & Order issued on March 27,

2012 (Docket Entry No. 361), this Court declared that:

> 1)   The sole and exclusive remedy for a dealer rejected by Old Chrysler who
>       prevails in a Section 747 arbitration with New Chrysler is a customary and
>       usual LOI to enter into a sales and service agreement with New Chrysler;
>
> 2)   Section 747 does not provide for reinstatement of a dealer rejected by Old
>       Chrysler who prevails in a Section 747 arbitration with New Chrysler;
>
> 3)   Section 747 does not authorize an award of monetary damages;
>
> 4)   Section 747 does not provide for judicial confirmation or enforcement and
>       neither the FAA nor the AAA's Commercial Rules govern these statutorily-
>       mandated arbitrations or authorize a party to move to confirm an arbitrator's
>       determination in a Section 747 arbitration; and
>
> 5)   Section 747 does not preempt the state-law dealer acts that govern the
>       relationships between automobile manufacturers and dealers in California
>       (Cal. Vehicle Code § 3060 *et seq.*), Florida (Fla. Stat. § 320.01 *et seq.*),
>       Michigan (Mich. Comp. Laws § 445.1561 *et seq.*), Nevada (Nev. Rev. Stat.
>       § 482.36311 *et seq.*), Ohio (Ohio Rev. Code. § 4517.43), or Wisconsin (Wis.
>       Stat § 218.0101 *et seq.*).

(*Id*. at 3-4).

This Court's March 27, 2012 Opinion & Order explained, however, that the above rulings

did not dispose of all claims in this action:

> The above rulings do not dispose of all claims in this action.  Like the
> situation in *Eagle Auto Mall Corp., supra*, several Rejected Dealers assert that New
> Chrysler has not provided them the statutory customary and usual letter of intent to
> enter into franchise agreements.
> Count Two of New Chrysler's July 14, 2001 Complaint for Declaratory Relief
> New Chrysler asks the Court to declare that the LOIs provided by New Chrysler to

Sowell is New Chrysler's customary and usual LOI and is in compliance with Section 747. Count One of Sowell's Counter-Complaint against New Chrysler seeks a declaration that the LOI New Chrysler provided to Sowell is not a customary and usual LOI in compliance with Section 747.

Livonia's complaint seeking declaratory relief also includes a request that the Court declare that the LOI New Chrysler provided to Livonia is not a customary and usual LOI in compliance with Section 747. Among other things, Livonia's Complaint alleges that the LOI provided to it by New Chrysler contains a provision that, in violation of the Michigan Dealer Act, states that Livonia will not protest if a new dealer is added in its market.

In addition, Count II of New Chrysler's February 9, 2011 Complaint for Declaratory Judgment against Fox Hills, Village, and Jim Marsh asks the Court to declare that the LOIs New Chrysler issued to Fox Hills, Village, and Jim Marsh are New Chrysler's customary and usual LOIs and comply with the Act.

Given the Court's rulings above, these dealers are now foreclosed from arguing that the statutorily required LOI must express the terms of their pre-bankruptcy status. Nevertheless, as in *Eagle Auto Mall Corp.*, there remains an open question as to whether the letters of intent provided to the Rejected Dealers constitute the customary and usual letters of intent required by the Act. And as the Rejected Dealers stress, they have not yet had any discovery on the issue.

Accordingly, the Court shall hold a Status / Scheduling Conference, to discuss the status of the remaining claims and the most efficient method of adjudicating those claims.

(*Id*. at 34-35). Thus, with respect to the remaining Rejected Dealers in this action, it is undisputed that the only issue left to determine is whether the letters of intent provided to the Rejected Dealers constitute the customary and usual LOIs required by the Act. (*See* 3/15/13 Hrg. Tr.).

Now, afer having completed discovery as to this issue, there are two motions for summary judgment on this remaining issue: 1) one filed by Livonia; and 2) one filed by New Chrysler, that addresses the remaining Rejected Dealers.

**Standard of Decision**

A declaratory judgment may be issued by the district court to "declare the rights and other legal relations of any interested party seeking such declaration." *Severe Records, LLC v. Rich*, 658 F.3d 571, 580 (6th Cir. 2011) (quoting 28 U.S.C. § 2201).

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a).

In their briefs, the parties made several references to a jury. (*See, e.g.* D.E. No. 439 at 11, stating "no reasonable jury could conclude otherwise; D.E. No. 448 at 12, asserting that a jury should determine if the LOI provided to Sowell was customary and usual).

However, because the claims at issue are claims for declaratory relief, and the relief sought is equitable relief only, this Court would be the trier of fact if the claims are not resolved at the summary judgment stage.

Declaratory relief may be legal or equitable depending on the basic nature of the underlying issues. *Golden v. Kelsey-Hayes, Co.*, 73 F.3d 648, 661-62 (6th Cir. 1996). "In actions seeking declaratory relief, the right to a jury trial is preserved only where is otherwise exists." *Id.* In other words, "[s]eeking declaratory relief does not entitle one to a jury trial where the right to a jury trial does not otherwise exist." *Id.* The right to a jury trial "normally exists where the relief sought is legal or remedial in nature, whereas no such right ordinarily exists where the plaintiffs invokes the coercive powers of the court in a manner analogous to traditional equitable remedies." 26 C.J.S. *Declaratory Judgments* § 164.

Section 747 does not provide for any kind of damages award and no one is seeking a

12

monetary damage award in this action.  Rather, New Chrysler seeks a declaration that the LOIs it provided to the remaining Rejected Dealers are sufficient under Section 747, while the remaining Rejected Dealers ask the Court to rule otherwise and to order New Chrysler to provide different LOIs than the ones provided to them.  That is akin to specific performance or an injunction – which are both equitable relief.  *Leary v. Daeschner*, 349 F.3d 888, 911 (6th Cir. 2003).

Thus, in evaluating the pending motions, this Court must determine whether this matter should proceed to a bench trial[3] or whether either side is entitled to summary judgment in their favor.

## ANALYSIS

**I.   How Should The Court Determine What Is A "Customary And Usual Letter Of Intent To Enter Into A Sales And Service Agreement" For Purposes Of A Rejected Dealer Who Prevails In A Section 747 Arbitration With New Chrysler?**

Section 747 provides that "If the arbitrator finds in favor of a covered dealership, the covered manufacturer shall as soon as practicable, but not later than 7 days after receipt of the arbitrator's determination, provide the dealer **a customary and ususal letter of intent to enter into a sales and service agreement**." § 747(e) (emphasis added).  This Court has declared that "under the plain language of the Act, the sole and exclusive remedy for a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler is a customary and usual letter of intent to enter into a sales and service agreement with New Chrysler."  (Docket Entry No. 361.

Unfortunately, Section 747 does not define the term "customary and usual letter of intent

---

[3]The Court raised this issue at the March 15, 2013, hearing, and the parties agreed that any trial in this action would be a bench trial; not a jury trial.  (*See* 3/15/13 Hrg. Tr.).

13

to enter into a sales and service agreement." Thus, the statute does not expressly state whether the term means a customary and usual LOI for a specific manufacturer or for the automotive industry as a whole. And the statute provides no guidance for the time period that should be considered when determining whether a LOI is a manufacturer's customary and usual LOI.

As explained below, two[4] different federal district courts have considered this same issue and have arrived at essentially the same conclusion.

### A.     *Eagle Auto Mall Corp.*

This issue was considered by the district court in *Eagle Auto Mall Corp. v. Chrysler Group, LLC*, 2011 WL 6754087 (E.D. N.Y. Dec. 23, 2011). That decision addressed motions for summary judgment directed at two causes of action. The first cause of action sought an order confirming the arbitration award. The other sought a declaratory judgment that New Chrysler failed to offer the plaintiffs the customary and usual letter of intent as required by the Act.

The district court dismissed the cause of action seeking confirmation of the arbitration award, ruling that such relief was not available under the Act. The court also ruled that the Act does not require New Chrysler to "reinstate" or "continue" a dealer terminated by Old Chrysler who prevailed in a Section 747 arbitration with New Chrysler:

---

[4]A third federal district court, one in New Mexico, also had claims brought by a rejected dealer who prevailed in a Section 747 arbitration with New Chrysler. *Quality Jeep Chrysler, Inc. v. Chrysler Group, LLC*, No. 1:10-Cv-00900 (D. N.M. August 18, 2011). The rejected dealer in that case also claimed that the LOI New Chrysler provided to it was not customary and usual. In addressing motions for summary judgment based upon multiple issues, the district court noted that nothing in Section 747 "prohibits a [LOI] that is unconscionable, onerous, illusory, or commercially unreasonable." (*Id*. at 10). Nevertheless, it ultimately concluded that "material facts remain with respect to whether the [LOI] issued by New Chrysler was customary and usual" and ruled that "What remains for trial is whether the LOI issued in this case was "customary and usual" as required by the Act." (*Id*. at 21). A review of the docket reflects that case settled very shortly after that opinion was issued.

> Terminated Chrysler dealers, however, such as Plaintiffs, never had any contractual relationship with New Chrysler.  In the absence of such relationships, terminated Chrysler dealers could not be "reinstated" or "continued" in their dealerships agreements.  Instead, those dealers were given the right, under the Act, to be "added" as franchisees.

*Id.* at *5.   The court then went on to discuss the nature of the remedy that the Act does provide –

the receipt of a customary and usual LOI from New Chrysler:

> The Act's language setting forth the remedy available to prevailing dealers was no doubt chosen because it can be applied to both terminated GM and Chrysler dealers.  Thus, **the remedy of providing the dealer with a "customary and usual letter of intent to enter into a franchise agreement," § 747(e), refers to terms being offered in the post-bankruptcy incarnations of both Chrysler and GM, companies operating in the present, rather than prior to 2009.**
>
> . . . .
>
> Having decided that Defendant was not required, under the terms of the Act, to reinstate Plaintiffs to their pre-bankruptcy status as dealers, the court turns to the issue of whether Plaintiffs have, as argued by Defendant, been offered the statutory customary and usual letter of intent to enter in franchise agreements.  While Plaintiffs are now foreclosed in this action from arguing that the statutorily required letter of intent must express the terms of their pre-bankruptcy status, **there remains an open question as to whether the letters of intent offered to Plaintiffs constitute the customary and usual letters of intent offered to all potential franchisees at the time of the offering**.  That issue raises questions of fact that cannot be determined in the context of this motion.

*Id.* (Emphasis added).

The court further clarified it position in a subsequent decision, wherein it stated that it

had interpreted the Act "to mean that Plaintiffs were entitled to an offer under the terms that were

usual and customary at the time of the offer, and not those governing Plaintiff's pre-bankruptcy

dealership agreements."  *Eagle Auto Mall Corp. v. Chrysler Group, LLC*, 2012 WL 4579375

(E.D. N.Y. Sept. 28, 2012).

The court then went on to discuss the *Los Feliz Ford* decision, which it found to be "a

15

well reasoned case." *Id*. at \*2.  It explained, in pertinent part, that:

> [T]he *Los Feliz Ford* court agreed with this court when construing the "customary and usual letter of intent" language as referring to those offered by Chrysler in its "post-bankruptcy incarnations." *Los Feliz Ford*, at 10.  As set forth in *Los Feliz Ford*, Chrysler cannot frustrate the purpose of Section 747 by offering dealers who prevailed in arbitration "unusual and onerous" terms, **but must instead, offer previously terminated dealers "the same terms they offer to new dealers."** *Los Feliz Ford*, at 14.  **This does not mean that the court is to scrutinize whether they are fair and reasonable**.  *See Los Feliz Ford*, at 17.  **It means only that the court must determine whether the terms offered are customary and usual.**
>       Put simply, **the issue is whether the letters of intent offered to Plaintiffs here were substantially the same as those offered to dealers who were given the opportunity to be added as new franchisees to the dealer network during the same time period.**

*Id.* (emphasis added).

Thus, the court in *Eagle Auto Mall Corp*. has interpreted the Act to require New Chrysler to provide a rejected dealer who prevailed in a Section 747 arbitration with a LOI that: 1) is customary and usual for New Chrysler, not Old Chrysler; and 2) is substantially the same as the LOIs that are offered to new franchisee candidates during the same time period.

### B.     *Los Feliz Ford*

*Los Feliz Ford v. Chrysler Group, LLC,* Case No. 10-6077 (C.D. Calf. April 9, 2012), also involved a rejected dealer who prevailed in a Section 747 arbitration with New Chrysler. Like this Court and the *Eagle Auto Mall Corp*. court, the district court concluded that Section 747's sole remedy is the receipt of a "customary and usual letter of intent" to enter into a sales and service agreement.  *Id.* at 10-13.  The court then analyzed the statutory construction of that term:

> As noted above, the *Eagle Auto* court required the dealership to show that their letters of intent were not "customary and usual" at the time they were offered. 2011 WL 6754087, at \*5.  The court acknowledged that the "customary and

16

usual" language "may be interpreted to require pre-bankruptcy terms that might apply to terminated GM dealers . . ." *Id.* However, the court reasoned that because "[t]he Act's language setting forth the remedy available to prevailing dealers was no doubt chosen because it can be applied to both terminated GM and Chrysler dealers," therefore **"the remedy of providing the dealer with 'a customary and usual letter of intent to enter into a franchise agreement' § 747(e), refers to terms being offered in the post-bankruptcy incarnations of both Chrysler and GM, companies operating in the present, rather than prior to 2009."** *Id.*

The Court agrees, and holds that "a customary and usual letter of intent" under Section 747(e) refers to letters issues by the post-bankruptcy incarnation of Chrysler. That interpretation accords with Section 747's remedial scheme. **Inclusion of the "customary and usual" language in Section 747(e) ensures that, if a dealer is successful in arbitration, the manufacturer cannot frustrate the purpose of the statute merely by offering the dealer unusual and onerous terms. By requiring covered manufacturers to offer terminated dealers the same terms that they offer to new dealers, the statute guards against that possibility.** Merely requiring manufacturers to offer all terminated dealers the same terms would allow them to systematically frustrate Section 747's basic remedial purpose. Requiring manufacturers to look to all historical and industry-wide practice in formulating these letters, by contrast, would be far too onerous a standard and would leave the inquiry open-ended and indeterminate. **By looking to the letters of intent New Chrysler has offered to other dealer candidates, the Court ensures that the manufacturer issues a letter of intent complying with the underlying purpose of Section 747, without dictating the precise terms that must be offered to the terminated dealers.**

Accordingly, in considering whether or not the Letter issued to [the plaintiff] was "customary and usual," the Court **compares that letter to other letters of intent offered by New Chrysler.**

*Id.* at 13-14 (emphasis added). The court rejected the plaintiff's position that the court should consider whether the LOI is "fair and reasonable" and stated that the "Court's inquiry must be a narrow one, focusing on whether or not the required letters of intent contain the terms that a "customary and usual" letter contains. *Id.* at 17. And it concluded that the only practical way to do that is to compare the LOI at issue "against the relevant universe" of LOIs issued by New Chrysler. *Id.* at 18.

Thus, the court in *Los Feliz Ford*, like the *Eagle Auto Mall Corp.* court, interpreted the

Act to require New Chrysler to provide a rejected dealer who prevailed in a Section 747 arbitration with a LOI that: 1) is customary and usual for New Chrysler, not Old Chrysler; and 2) is substantially the same as the LOIs that are offered to new franchisee candidates during the same time period. In addition, both courts rejected the notion that the court should consider whether the LOI provided was "fair and reasonable" and, instead, concluded the inquiry was narrow.

### C.     This Court Agrees With The Reasoning In The Above Decisions And Concludes That The Inquiry Before This Court Is A Narrow One

This Court agrees with the reasoning in the above decisions.  The inquiry before this Court is a narrow one.  The Court shall compare the LOIs issued to the remaining rejected dealers against the "relevant universe" of LOIs.  And that "relevant universe" of LOIs consists of: 1) LOIs issued by New Chrysler, not Old Chrysler; 2) LOIs issued to new dealer candidates, not existing dealers seeking to add a new line or relocate; and 3) LOIs that were issued from the time that New Chrysler started operating through July 2010 (when the last of the LOIs at issue were sent).

## II.     The Court Concludes That A Bench Trial Is Warranted

Again, with respect to the only remaining claims in this action, it is undisputed that the sole issue is whether New Chrysler issued the remaining Rejected Dealers its "customary and usual" LOI to enter into a sales and service agreement

And this Court, persuaded by *Los Feliz Ford* and *Eagle Auto Mall Corp.*, concludes that this inquiry is a narrow one.  The Court must compare the LOIs issued to the remaining rejected dealers against the "relevant universe" of LOIs.  And that "relevant universe" of LOIs consists of:

18

1) LOIs issued by New Chrysler, not Old Chrysler; 2) LOIs issued to new dealer candidates, not existing dealers seeking to add a new line or relocate; and 3) LOIs that were issued from the time that New Chrysler started operating through July 2010 (when the last of the LOIs at issue were sent).

This Court now must determine, applying that narrow standard, whether a genuine issue of material fact exists, such that the issue must be resolved by the trier of fact.

New Chrysler's Motion for Summary Judgment, and its opposition to Livonia's Motion for Summary Judgment, are based upon a Declaration from John Tangeman and an attached chart that analyzes the relevant universe of LOIs issued by New Chrysler. But, as several Rejected Dealers note in their briefs, his deposition testimony conflicts with some of the statements in his Declaration – as to which LOIs were included in the analysis. Given that discrepancy, and the fact that any trial will be a bench trial, this Court concludes that the more prudent course is to proceed with a bench trial, wherein the trier of fact could evaluate the testimony of Tangeman and any other relevant evidence.

## III.   The Court Shall Address And Rule Upon A Number Of Arguments Made By The Parties In Their Briefs

Nevertheless, in order to streamline that bench trial[5] and allow the parties to adequately prepare for it, the Court shall address a number of arguments made in the parties' briefs.

---

[5]In other words, the Court is addressing these arguments so that the parties will not attempt to re-litigate issues already determined by the Court (i.e., the Rejected Dealers' assertion that they have a right to "reinstatement" or "re-establishment" of a dealership at their old location) or attempt to introduce irrelevant evidence (e.g., expert testimony regarding the LOIs that GM or others in the industry issue or LOIs that Old Chrysler issued).

**A.    This Court Rejects The Argument That New Chrysler Does Not Have A "Customary And Usual" LOI Because They Always Vary To Some Extent**

Some of the Remaining Rejected Dealers assert that New Chrysler does not, in fact, have a "customary and usual" LOI.  That argument is based on the fact that the LOIs issued by New Chrysler contain multiple provisions and not all of the same provisions are contained in every LOI issued by it.  Some Rejected Dealers contend that to be "customary and usual", the LOIs issued by New Chrysler must be identical.  They claim that, because the LOIs issued by New Chrysler always vary to some extent, they are not "customary and usual."  After asserting that New Chrysler does not actually have a customary and usual LOI, those Rejected Dealers then take the position that this Court could somehow construct an alternative LOI that New Chrysler should issue to them.

The Court finds this argument without merit. Section 747's sole and exclusive remedy is the receipt of a customary and usual LOI from New Chrysler.  By using the phrase "customary and usual", Congress appeared to reference a typical or usual LOI.  It could have required the issuance of a specific or standard LOI, but chose not to do so.

Moreover, a conclusion that New Chrysler does not have a customary and usual LOI would not aid the Rejected Dealers, given that the sole and exclusive remedy under Section 747 is the receipt of a customary and usual LOI.  The Rejected Dealers have not provided any authority to support their position that this Court can simply create a LOI with the terms desired by the Rejected Dealers if New Chrysler does not, in fact, have a customary and usual LOI. There is certainly no language in the statute that authorizes that, or any other alternative remedy, should a covered manufacturer not have a customary and usual LOI.

**B.  This Court Rejects The Argument That New Chrysler Does Not Have A "Customary And Usual" LOI Because It Has Later Modified Provisions When Entering Into Settlement Agreements With Other Parties**

Some Rejected Dealers also argue that New Chrysler should be deemed not to have a "customary and usual" LOI because New Chrysler has later modified some of the LOIs it issued to other parties when entering into settlement agreements.  The Court rejects this argument because the proper inquiry is to the LOIs New Chrysler issued, not whether New Chrysler and other parties subsequently negotiated settlements wherein New Chrysler agreed to modify terms. Again, the Court's inquiry here is narrow – whether New Chrysler issued these Rejected Dealers it customary and usual LOI after they prevailed in their Section 747 arbitrations.  That New Chrysler may have negotiated various changes with dealers after issuing their customary and usual LOI does not change the inquiry.

Similarly, some Rejected Dealers assert that the Court should consider that New Chrysler sometimes negotiates changes with a dealer after it has issued an LOI and therefore its LOIs should be deemed "illusory."  But, as another court has noted, nothing in Section 747 "prohibits a [LOI] that is unconscionable, onerous, **illusory**, or commercially unreasonable."  (*Id*. at 10) (emphasis added).  *Quality Jeep Chrysler, Inc. v. Chrysler Group, LLC*, No. 1:10-Cv-00900 (D. N.M. August 18, 2011).

**C.  The Rejected Dealers Are Not Entitled To LOIs That State That Their Previous Franchises Are Being Reinstated**

Some Rejected Dealers argue that, to comport with Section 747, any LOI issued to them by New Chrysler must state that their previous franchise is being reinstated or re-established.

The Court rejects this argument because this Court has already ruled that "Section 747

21

does not provide for reinstatement of a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler." (3/27/12 Opinion & Order).

### D. Rejected Dealers Who Signed The LOIs Issued To Them Are Not Precluded From Arguing That Those LOIs Do Not Comply With The Act

In its Briefs, New Chrysler asserts that some of the remaining Rejected Dealers cannot contest that the LOIs they received are New Chrysler's customary and usual LOIs for purposes of the Act because they have either signed the LOI issued to them or, in discovery, stated that they only objected to certain provisions.

The Court rejects that argument. The Court fails to see how the fact that some Rejected Dealer signed the LOI issued to them, or that they truly only object to the substance of a few provisions in it, precludes them from arguing that the LOIs issued do not comply with the Act.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that the parties' Motions for Summary Judgment are hereby DENIED.

IT IS FURTHER ORDERED that this matter shall proceed to a bench trial on **Tuesday, July 9, 2013, at 8:30 a.m**. At that bench trial, this Court will apply the standards set forth in this Opinion & Order, in order to determine whether New Chrysler issued any remaining Rejected Dealers its "customary and usual" LOI to enter into a sales and service agreement, as required by Section 747.

IT IS FURTHER ORDERED that the Court shall hold a Final Pretrial Conference on **Monday, June 3, 2013, at 2:30 p.m.** Client representatives are not required to appear in person

22

for the Final Pretrial Conference, but must be available by telephone during the conference.

     IT IS SO ORDERED.

                  S/Sean F. Cox
                  Sean F. Cox
                  United States District Judge

Dated:  April 11, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2013, by electronic and/or ordinary mail.

                  S/Jennifer McCoy
                  Case Manager