UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Chrysler Group LLC,

    Plaintiff,

v.                                                                                          Case No. 10-12984

South Holland Dodge, Inc., *et al.,*                          Honorable Sean F. Cox

    Defendants;

        *Consolidated with*

Livonia Chrysler Jeep, Inc., a Michigan
for profit corporation,

    Plaintiff,

v.                                                                                          Case No. 10-13290

Chrysler Group, LLC, *et al.*,                                    Honorable Sean F. Cox

    Defendants;

        *Consolidated with*

Chrysler Group LLC,

    Plaintiff,

v.                                                                                          Case No. 10-13908

Sowell Automotive, Inc., *et al.*,                              Honorable Sean F. Cox

    Defendants.
_____/

## OPINION & ORDER
## FOLLOWING BENCH TRIAL

    These consolidated matters were tried to the Court on July 9, 2013, in order to determine

the sole remaining issue in these matters – whether the letters of intent to enter into sales and service agreements issued by Chrysler Group LLC ("New Chrysler") to the remaining Rejected Dealers in these matters (Livonia Chrysler Group LLC ("Livonia"), Village Chrysler Jeep, Inc. d/b/a Village Automotive Center ("Village"), Fox Hills Motor Sales, Inc. d/b/a Fox Hills Chrysler Jeep ("Fox Hills"), and Jim Marsh American Corp. ("Jim Marsh")) are "customary and usual" for purposes of Section 747 of the Consolidated Appropriations Act of 2010, Pub. L. No. 111-117 ("Section 747" or "the Act"). As explained below, based on the evidence presented at the July 9, 2013 bench trial, this Court finds in favor of New Chrysler and against the Rejected Dealers and rules that the letters of intent issued to the remaining Rejected Dealers are New Chrysler's "customary and usual" letters of intent as required under Section 747. As such, this Court shall enter judgment in New Chrysler's favor and dismiss with prejudice the remaining claims of the remaining Rejected Dealers.

## BACKGROUND

This case has a fairly lengthy background, which is more fully set forth in this Court's March 27, 2012 Opinion & Order and its April 11, 2013 Opinion & Order. Below is a summary of the factual and procedural background.

For decades, various state-law dealer acts have provided certain protections for existing dealers and allow them to challenge a manufacturer's decision to establish or relocate another dealer into a given area. Such state-law dealer acts exist in Michigan, California, Florida, Nevada, Ohio, and Wisconsin. While the dealer acts in each of these states differ in various respects, they provide similar protections to existing dealers. Automotive manufacturers and dealers have been operating under these state-law dealer acts for decades.

Livonia, Village, Fox Hills, and Jim Marsh each operated under Dealer Agreements with Chrysler LLC ("Old Chrysler").

In 2009, both Old Chrysler and Old GM filed for bankruptcy and consolidated their dealer networks. While both manufacturers consolidated their nationwide dealer networks in connection with these bankruptcy proceedings, they did so in different ways.

Unlike Old Chrysler, Old GM assigned its existing dealer agreements to the GM entity emerging from bankruptcy, subject to "winding down" provisions.

Old Chrysler took a different approach. On April 30, 2009, Old Chrysler filed a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code. Rather than liquidate, Old Chrysler agreed, subject to bankruptcy court approval, to sell substantially all of its assets to a new entity formed by Fiat S.p.A. ("Fiat") under Section 363 of the Bankruptcy Code.

The sale agreement provided that Old Chrysler would transfer substantially all of its operating assets to Chrysler Group, LCC ("New Chrysler"), a new entity that would be partially owned by Fiat. (*See* Sale Op. 9-10, attached as Ex. B to D.E. No. 210). The terms of this transaction were memorialized in a Master Transaction Agreement among Old Chrysler, Fiat and New Chrysler. It provided, among other things, that Old Chrysler would transfer substantially all of its operating assets to New Chrysler, including the assignment of approximately 2,400 dealer agreements. It expressly excluded from the assets transferred to New Chrysler the remaining 789 dealer agreements that Old Chrysler intended to seek approval to reject.

On May 31, 2009, the bankruptcy court authorized the proposed sale. (*See In Re Chrysler*, 405 B.R. 84 (S.D. N.Y. May 31, 2009), attached as Ex. B to D.E. No. 210). On June

2009, the bankruptcy court entered orders approving the sale and authorizing the rejection of the 789 dealer agreements. (*See* Exs. E and F to D.E. No. 210). The bankruptcy court ordered that New Chrysler would purchase the assets free and clear of any third-party claims, including any claims by Old Chrysler dealers arising from the rejection of their dealership agreements. (*See* Ex. B to D.E. No. 210 at 24-30; Ex. E to D.E. No. 210 at 17-20). On June 10, 2009, the sale closed and became final.

The dealer agreements that Livonia, Village, Fox Hills, and Jim Marsh had with Old Chrysler were all rejected during the bankruptcy proceedings.

Chrysler and GM dealers responded to these events by turning to Congress and asking for relief.

On December 16, 2009, Congress enacted Section 747. Section 747 provides that a "covered dealership that was not lawfully terminated under applicable State law on or before April 29, 2009, [the day before Old Chrysler filed its bankruptcy petition], shall have the right to seek, through binding arbitration, continuation, or reinstatement of a franchise agreement, or to be added as a franchisee to the dealer network of the covered manufacturer in the geographical area where the covered dealership was located when its franchise agreement was terminated, not assigned, not renewed, or not continued." § 747(b).

Section 747 provides that "[t]he arbitrator shall balance the economic interest of the covered dealership, the economic interest of the covered manufacturer, and the economic interest of the public at large and shall decide, based on that balancing, whether or not the covered dealership should be added to the dealer network of the covered manufacturer." Section 747 lists various factors that the arbitrator should consider. It further provides that "[t]he arbitrator shall

issue a written determination no later than 7 business days after the arbitrator determines that the case has been fully submitted."

Section 747 states that the "arbitrator shall not award compensatory, punitive, or exemplary damages to any party. If the arbitrator finds in favor of a covered dealership, the covered manufacturer shall as soon as practicable, but not later than 7 days after receipt of the arbitrator's determination, provide the dealer *a customary and ususal letter of intent to enter into a sales and service agreement*." § 747(e) (emphasis added). The Court shall hereinafter refer to a letter of intent to enter into a sales and service agreement as an "LOI."

Because they had each operated under franchise agreements with Old Chrysler, each of the Rejected Dealers in this action was permitted to seek arbitration under Section 747 with New Chrysler and did so. Livonia, Village, Fox Hills, and Jim Marsh were among the 32 dealers across the nation that prevailed in Section 747 arbitrations with New Chrysler.

The instances in which Rejected Dealers prevailed in Section 747 arbitrations with New Chrysler gave rise to this litigation because New Chrysler, the Rejected Dealers, and other interested existing dealers, disagreed as to what happens next following those arbitration rulings.

In sum, New Chrysler claimed that Section 747's sole and exclusive remedy is that the prevailing dealer receives a customary and usual LOI from New Chrysler. New Chrysler argued that it has provided prevailing dealers with the required LOI's and that Section 747 does not preempt state dealer acts or allow New Chrysler to ignore the provisions of those acts. New Chrysler further argued that Section 747 does not authorize a dealer to be "reinstated" and that any "reinstatement" could not result here in any event because these dealers never had a dealer agreement with New Chrysler.

The Rejected Dealers disagreed. Some Rejected Dealers claimed that Section 747 preempts state dealer acts or that the dealer acts do not apply to them. Some took the position that the LOI's they received from New Chrysler are deficient and/or insufficient under Section 747. Some took the position that, under Section 747, they are entitled to be "reinstated" and are entitled to be placed in the same position they were in before their franchise terminated.

In March of 2012, this matter came before the Court on multiple motions, filed by the parties prior to discovery. In these motions, the parties raised the common threshold issue of what relief is provided by Section 747 to a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler. The motions also raised the common issue of whether Section 747 preempts state-law dealer acts. In an Opinion & Order issued on March 27, 2012 (Docket Entry No. 361), this Court declared that: 1) the sole and exclusive remedy for a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler is a customary and usual LOI to enter into a sales and service agreement with New Chrysler; 2) Section 747 does not provide for reinstatement of a dealer rejected by Old Chrysler who prevails in a Section 747 arbitration with New Chrysler; 3) Section 747 does not authorize an award of monetary damages; 4) Section 747 does not provide for judicial confirmation or enforcement and neither the FAA nor the AAA's Commercial Rules govern these statutorily-mandated arbitrations or authorize a party to move to confirm an arbitrator's determination in a Section 747 arbitration; and 5) Section 747 does not preempt the state-law dealer acts that govern the relationships between automobile manufacturers and dealers in California (Cal. Vehicle Code § 3060 *et seq.*), Florida (Fla. Stat. § 320.01 *et seq.*), Michigan (Mich. Comp. Laws § 445.1561 *et seq.*), Nevada (Nev. Rev. Stat. § 482.36311 *et seq.*), Ohio (Ohio Rev. Code. § 4517.43), or

Wisconsin (Wis. Stat § 218.0101 *et seq*.). (*Id*. at 3-4).

This Court's March 27, 2012 Opinion & Order explained, however, that the above rulings did not dispose of all claims in this action:

> The above rulings do not dispose of all claims in this action. Like the situation in *Eagle Auto Mall Corp., supra*, several Rejected Dealers assert that New Chrysler has not provided them the statutory customary and usual letter of intent to enter into franchise agreements.
> . . . .
> Given the Court's rulings above, these dealers are now foreclosed from arguing that the statutorily required LOI must express the terms of their pre-bankruptcy status. Nevertheless, as in *Eagle Auto Mall Corp*., there remains an open question as to whether the letters of intent provided to the Rejected Dealers constitute the customary and usual letters of intent required by the Act. And as the Rejected Dealers stress, they have not yet had any discovery on the issue.
> Accordingly, the Court shall hold a Status / Scheduling Conference, to discuss the status of the remaining claims and the most efficient method of adjudicating those claims.

(*Id*. at 34-35). Thus, with respect to the remaining Rejected Dealers in this action, it is undisputed that the only issue left to determine is whether the letters of intent provided to the Rejected Dealers constitute the customary and usual LOIs required by the Act. (*See* 3/15/13 Hrg. Tr.).

Afer having completed discovery as to this issue, the matter came before this Court on two motions for summary judgment on this remaining issue: 1) one filed by Livonia; and 2) one filed by New Chrysler, that addresses the remaining Rejected Dealers. This Court issued an Opinion & Order as to those motions on April 11, 2013. (Docket Entry No. 468). As explained that Opinion & Order, with respect to the remaining claims in this action, the sole issue is whether New Chrysler issued the remaining Rejected Dealers its "customary and usual" LOI to

enter into a sales and service agreement. This Court agreed with the reasoning of the two other federal district courts that have addressed the issue and concluded that the inquiry before the Court is a narrow one. The Court must compare the LOIs issued to the remaining Rejected Dealers against the "relevant universe" of LOIs issued by New Chrysler. And that "relevant universe" of LOIs consists of: 1) LOIs issued by New Chrysler, not Old Chrysler; 2) LOIs issued to new dealer candidates, not existing dealers seeking to add a new line or relocate; and 3) LOIs that were issued from the time that New Chrysler started operating in January 2009, through July 2010 (when the last of the LOIs were issued to the remaining Rejected Dealers). (*Id*. at 5 & 18). Given that it was undisputed that trial as to this issue would be a bench trial, and certain conflicts in the evidence that had been presented to the Court, this Court denied the motions for summary judgment and concluded that proceeding with a bench trial would be the better course. (*Id*.).

In order to streamline the bench trial, this Court's April 11, 2013 Opinion & Order addressed and ruled upon a number of arguments that had been made in the parties' briefs at the summary judgment stage. (*Id*. at 19-22). In doing so, this Court: 1) rejected the argument that New Chrysler does not have a "customary and usual" LOI because they always vary to some extent (*Id*. at 20-21); 2) rejected the argument that New Chrysler does not have a "customary and usual" LOI because it has later modified provisions when entering into settlement agreements with other parties (*Id*. at 21); 3) ruled once again that Rejected Dealers are not entitled to LOIs that state that their previous franchises are being reinstated (*Id*. at 21-22); and 4) ruled that Rejected Dealers who signed the LOIs issued to them are not precluded from arguing that those LOIs do not comply with the Act. (*Id*. at 22).

With the sole remaining issue so framed by this Court's rulings, the remaining parties

proceeded with a bench trial on July 9, 2013.  At that time, the only Rejected Dealers that remained[1] in this action were: 1) Livonia; 2) Village; 3) Fox Hills; and 4) Jim Marsh.  Thus, New Chrysler and those four remaining Rejected Dealers (Livonia, Village, Fox Hills, and Jim Marsh) were the only parties who presented evidence at the bench trial.

## THE BENCH TRIAL

The parties presented the Court with a Joint Exhibit Book.  During trial, the Court admitted Joint Exhibit A, which is a multi-page spread sheet.  The Court also admitted numerous other Joint Exhibits.  Among those Joint Exhibits admitted are Joint Exhibits 1 through 122, which represent the one hundred and twenty-two LOIs that New Chrysler issued to new dealer candidates during the relevant period from June 9, 2009, through July 31, 2010.

The spreadsheet (Joint Exhibit A) lists, in the second column, the various new dealer candidates who received an LOI from New Chrysler during the relevant time period from June 9, 2009, through July 31, 2010.  For each of those new dealer candidates, the first column contains a number from 1 to 122.  That number corresponds to the Joint Exhibit that contains the LOI that New Chrysler issued to that new dealer candidate.  The remaining columns across the spreadsheet correspond to the various provisions that are found in New Chrysler's LOI.

The various rows in the spreadsheet are color-coded.  Those candidates shown in yellow represent entities who had sought arbitration under Section 747 but settled with New Chrysler before an arbitration was concluded, and who were issued an LOI by New Chrysler as result of a settlement.  Those shown in green are rejected dealers who prevailed in Section 747 arbitrations

---

[1] All other Rejected Dealers in these consolidated actions reached settlement agreements with New Chrysler and dismissed their claims with prejudice.

9

with New Chrysler. Those shown in orange are candidates who received an LOI that was issued in the normal course of business (i.e, New Chrysler adding new dealers to its network during the normal course of business, as opposed to being related to Section 747).

John Tangeman was the only witness who was called to testify at the July 9, 2013, bench trial. The Court finds Mr. Tangeman to be a highly credible witness. The bench trial was concluded in one day.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witness who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT

Each of the Rejected Dealers at issue (Livonia, Village, Fox Hills, and Jim Marsh) received an LOI that consisted of twenty numbered paragraphs, and a total of 43 subparts. (*See* Jt. Tr. Exs. 72, 117, 44 & 59).

John Tangeman was New Chrysler's National Dealer Placement Manager during the Old Chrysler bankruptcy. He remained in that same position during, and for all relevant periods after, the Section 747 arbitrations.

New Chrysler used the same administrative process in creating and issuing the Rejected Dealers' LOIs as it used in issuing LOIs to ordinary course dealers.

---

[2]To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

In both situations, New Chrysler would create the initial letter of intent using a template on New Chrysler's computer system.

The parties jointly admitted into evidence 122 letters of intent that New Chrysler issued to new dealers that were being added to the New Chrysler network between June 9, 2009 and July 31, 2010. That group of LOIs constitutes the "relevant universe" per this Court's April 11, 2013 Opinion & Order and is referred to here as the "Issued LOIs."

New Chrysler compiled information from the Issued LOIs into a spreadsheet that identified the presence or absence of each of the 43 separate subparts of the Rejected Dealers' LOIs in the 122 Issued LOIs.

New Chrysler's spreadsheet, along with a summary of that data, reflecting the percent of the time each provision is present among the Issued LOIs, was admitted into evidence as Joint Trial Exhibit A.

## CONCLUSIONS OF LAW

As this Court has previously ruled, Section 747's sole and exclusive remedy for a rejected dealer who prevails in a Section 747 arbitration is the receipt of a "customary and usual" LOI to enter into a sales and service agreement with New Chrysler.

As stated *supra*, the sole issue at this trial was whether the remaining Rejected Dealers (Livonia, Village, Fox Hills, and Jim Marsh) were, as required by Section 747, issued New Chrysler's "customary and usual" LOI to enter into sales and service agreements.

This Court has jurisdiction to decide this matter as an appropriate exercise of its federal question jurisdiction under 28 U.S.C. § 1331. The issues presented also raise a claim or controversy sufficient to confer jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C.

11

§ 2201. The issue raised here – whether the Rejected Dealers were issued a "customary and usual" LOI from New Chrysler – constitutes a controversy over which this Court may exercise jurisdiction.

As this Court has previously ruled, the Rejected Dealers are not entitled to "reinstatement" of their pre-bankruptcy dealership agreements with Old Chrysler. (*See* March 27, 2012 Opinion & Order (Docket Entry No. 361) at 3-4; April 11, 2013 Opinion & Order (Docket Entry No. 468) at 21-22). Rather, the remaining Rejected Dealers are entitled only to a letter of intent that is "customary and usual" for New Chrysler.

Section 747, however, does not define the term "customary and usual." Where, as here, "a term goes undefined in a statute, we give the term is ordinary meaning." *Taniguchi v. Kan Pacific Saipan, Ltd.*, __ U.S. __, 132 S.Ct. 1997, 2002, 182 L.Ed.2d 903 (2012).

Dictionaries represent one source of such common meaning. *Taniguchi, supra.* Here, "customary" means "commonly practiced, used, or observed." Merriam-Webster Collegiate Dictionary 308 (11th ed.). Similarly, something is "usual" when it is "found in ordinary practice or in the ordinary course of events" or is in accordance with "usage, custom or habit." *Id.* at 1378; *see also* Black's Law Dictionary (9th ed. 2009) (defining "usual" as "[e]xpected based on previous experience, or on a pattern or course of conduct to date"). The two terms are essentially synonymous. *See* Merriam-Webster Collegiate Dictionary 308, 1378 (offering "customary" and "usual" as synonyms for each other).

For further guidance in interpreting "customary and usual," the Court may also look to other contexts where it has been expressly defined. *Cf. Sec. Indus. Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 468 U.S. 137, 150-51 (1984) (borrowing definition of statutory phrase from

other statutes). Although not frequently found in federal legislation, the phrase "customary" is used in federal Medicare regulations. In these regulations, a "customary" charge is one used by "the individual physician . . . *in the majority* of cases." 42 C.F.R. § 405.503 (emphasis added)

LOIs need not be identical as to each and every provision in order to be considered "customary and usual."

This Court concludes that it must determine whether the LOIs issued to the Rejected Dealers were substantially the same as those offered to dealers who were given the opportunity to be added as new franchisees to the dealer network during the same time period, both in the ordinary course of New Chrysler's dealer network activities and to arbitrating dealers. To make this determination, the terms of the Rejected Dealers' LOIs must be compared to the terms in the Issued LOIs. If a specific term of the Rejected Dealers' LOIs or a term that is substantially the same is found in a majority of the Issued LOIs, then it is, axiomatically, a "customary and usual" term.

This Court has already determined that the LOIs to be compared are those issued by Chrysler Group between June 9, 2009 and July 31, 2010, to new dealer candidates in the ordinary course of business as well as to all arbitrating dealers, or the Issued LOIs.

Joint Trial Exhibit A shows that each term of the remaining Rejected Dealers' LOIs is found in a majority of the Issued LOIs. Thirty-six of the 43 provisions in the Rejected Dealers' LOIs appear in 90% or more of the Issued LOIs, with 20 appearing 100% of the time. No

provision appears less than 69% of the time.

The Issued LOIs contained in Joint Trial Exhibits 1 through 122, and summarized in Joint Trial Exhibit A, demonstrate that the LOIs that the Rejected Dealers received were substantially the same as those offered to other new dealers to be added to New Chrysler's dealer network during the same time period.

The Rejected Dealers have failed to present evidence that any of the terms in their LOIs were not included in at least the majority of the Issued LOIs. Accordingly, based on the evidence presented, this Court finds that the Rejected Dealers' LOIs are customary and usual and rules that the Rejected Dealers have received the relief that they are entitled to under Section 747.

Judgment shall be entered in New Chrysler's favor. All remaining claims of the remaining Rejected Dealers are hereby dismissed with prejudice. The parties are directed to submit a proposed judgment, that comports with the Court's rulings, within fourteen (14) days of this Opinion & Order.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: July 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 23, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager